**Mark DICKERSON, Plaintiff,**

v.

**STATEN TRUCKING, INC., f/k/a Isaac Staten d/b/a Staten Trucking, and Union Pacific Railroad Company Defendants**

No. 4–04–CV–1458.

United States District Court,
E.D. Arkansas,
Western Division.

April 19, 2006.

Edward T. Oglesby, Oglesby, Busfield & Dugger, P.L.L.C., Little Rock, AR, Jerome J. Schlichter, Nelson Gregory Wolff, Schlichter, Bogard & Denton, St. Louis, MO, for Plaintiff.

Joseph Cotten Cunningham, Laser Law Firm P.A., Scott J. Lancaster, Friday, Eldredge & Clark, LLP, Little Rock, AR, for Defendants.

## ORDER

EISELE, District Judge.

Presently before the Court is the Motion for Summary Judgment filed by Defendant

Union Pacific Railroad Company. The Court grants this Motion in part, and denies it in part.

## I. Background and Undisputed Facts

Plaintiff Mark Dickerson worked as a freight engineer for Defendant Union Pacific. On January 21, 2004, a Union Pacific train operated by Plaintiff, along with conductor Johnny Dodds and student-operating engineer Mike Elmendorf, collided with a log truck owned by Defendant Staten Trucking Company and driven by Leon Brown. The collision occurred at railway crossing in Stamps, Arkansas around 9:50 a.m. at mile post 384.65.

As the Union Pacific train approached the Stamps crossing, Plaintiff and Mr. Dodds saw the log truck on the railroad tracks. Prior to the point of collision, Plaintiff dove to the locomotive cab floor, followed by Mr. Dodds who jumped or fell on top of Plaintiff. Plaintiff suffered injuries to his knees and his lower back.

On November 17, 2004, Plaintiff initiated this action seeking relief under the Federal Employers' Liability Act ("FELA") and the Locomotive Inspection Act ("LIA"). Plaintiff seeks recovery under FELA on the grounds that Defendant Union Pacific Railroad Company ("Union Pacific") was negligent because:

 a. it failed to provide Plaintiff with a reasonably safe place to work;

 b. it required Plaintiff to work in a defective locomotive which lacked adequate physical restraints and safety belts;

 c. it failed to provide Plaintiff with reasonably adequate tools, equipment and a reasonably safe and crashworthy locomotive;

 d. it failed to provide reasonably safe methods for work;

 e. it failed to provide reasonably safe conditions for work;

 f. it failed to take steps to adequately cushion the interior of the locomotive cab knowing it would be involved in collisions;

 g. it failed to install track sensing devices to enable occupants to know of an impending collision;

 h. it failed to provide adequate safety training and instruction to its employees regarding safe responses to imminent crossing collisions when it knew or should have known its employees would be involved in collisions which could not be avoided;

 i. it failed to provide a crashworthy locomotive when it knew its locomotives would be involved in collisions;

 j. it failed to follow the recommendations of Boeing Vertol Company for the cushioning of locomotives;

 k. it failed to keep its grade crossing in a reasonably safe condition;

 l. it failed to provide gates, barriers and/or passive restraints at its crossings;

 m. it permitted the use of an engine which was not in proper condition and safe to operate in the service to which it was put in violation of 49 C.F.R. §§ 229.41 and 229.45.

(Amended Complaint, Dkt. # 61, ¶ 22(a)-(m)). Plaintiff subsequently withdrew its claims against Defendant Union Pacific for failure to install track sensing devices and for violations of the LIA. (Plaintiff's Brief Opposing Summary Judgment, Dkt. # 78, p. 2, fn.1). Defendant Union Pacific filed a Motion for Summary Judgment, which has been subsequently characterized as a motion for partial summary judgment solely with respect to Plaintiff's claims dealing with crew training and locomotive "crashworthiness".

### III. Summary Judgment Standard

Summary judgment is appropriate only when, in reviewing the evidence in the light most favorable to the non-moving party, there is no genuine issue as to any material fact, so that the dispute may be decided solely on legal grounds. *Holloway v. Lockhart*, 813 F.2d 874 (8th Cir.1987); Fed.R.Civ.P. 56. The Supreme Court has established guidelines to assist trial courts in determining whether this standard has been met:

> The inquiry performed is the threshold inquiry of determining whether there is a need for trial—whether, in other words, there are genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

The Eighth Circuit set out the burdens of the parties in connection with a summary judgment motion in *Counts v. MK–Ferguson Co.*, 862 F.2d 1338 (8th Cir. 1988):

> [T]he burden on the party moving for summary judgment is only to demonstrate, *i.e.*, '[to] point[ ] out to the District Court,' that the record does not disclose a genuine dispute on a material fact. It is enough for the movant to bring up the fact that the record does not contain such an issue and to identify that part of the record which bears out his assertion. Once this is done, his burden is discharged, and, if the record in fact bears out the claim that no genuine dispute exists on any material fact, it is then the respondent's burden to set forth affirmative evidence, specific facts, showing that there is a genuine dispute on that issue. If the respondent fails to carry that burden, summary judgment should be granted.

*Id.* at 1339 (quoting *City of Mt. Pleasant v. Associated Elec. Coop.*, 838 F.2d 268, 273–74 (8th Cir.1988) (citations omitted)(brackets in original)).

"A party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] ... which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). However, the moving party is not required to support its motion with affidavits or other similar materials negating the opponent's claim. *Id.*

Once the moving party demonstrates that the record does not disclose a genuine dispute on a material fact, the non-moving party may not rest upon the mere allegations or denials of his pleadings, but his response, by affidavits or as otherwise provided in Rule 56, must set forth specific facts showing that there is a genuine issue for trial. Fed.R.Civ.P. 56(e). The plain language of Rule 56(c) mandates the entry of summary judgment against a non-moving party which, after adequate time for discovery, fails to make a showing sufficient to establish the existence of an element essential to its case, and on which that party will bear the burden of proof at trial. *Celotex Corp.*, 477 U.S. at 322, 106 S.Ct. 2548.

### IV. Discussion

The Federal Employers' Liability Act ("FELA") imposes liability on common carrier railroads for injuries suffered by an employee "resulting in whole or in part from the negligence of any of the officers, agents, or employees of such carrier, or by reason of any defect or insufficiency, due to its negligence, in its cars, engines, appliances, machinery, track, roadbed, works, boats, wharves, or other equipment." 45

U.S.C. § 51. As a threshold matter, the Court must consider whether the Federal Railroad Safety Act ("FRSA") precludes Plaintiff's FELA claims.

The FRSA grants general authority to the Secretary of Transportation to "prescribe regulations and issue orders for every area of railroad safety supplementing laws and regulations in effect on October 16, 1970." 49 U.S.C. § 20103(a). Mindful of the FRSA's goal of national uniformity,[1] courts have precluded FELA claims when the railroad's underlying conduct was in compliance with specific FRSA regulations. *See, e.g., Waymire v. Norfolk and Western Ry. Co.*, 218 F.3d 773, 775 (7th Cir.2000) ("The question with which we are presented is whether a railroad company can be liable in a FELA negligence action claiming unsafe speed and inadequate warning devices when the complained of conduct complies with the conduct mandated by FRSA and its regulations. We hold that it cannot."); *see also Lane v. R.A. Sims, Jr., Inc.*, 241 F.3d 439, 443–44 (5th Cir.2001) (finding railroad employee's FELA claim for excessive train speed precluded where the railroad complied with FRSA speed regulations).

*A. Claims Challenging Crashworthiness of Locomotive*

■ Plaintiff's "crashworthiness" claims allege negligence on the basis of Defendant Union Pacific's failure to install certain equipment or devices on its locomotive, such as "physical restraints and safety belts", and interior cushioning. The FRSA regulations pertinent to these claims may be found in 49 C.F.R. § 229.119, which provides:

(a) Cab seats shall be securely mounted and braced. Cab doors shall be equipped with a secure and operable latching device.

(b) Cab windows of the lead locomotive shall provide an undistorted view of the right-of-way for the crew from their normal position in the cab. (See also, Safety Glazing Standards, 49 CFR Part 223, 44 FR 77348, December 31, 1979.)

(c) Floors of cabs, passageways, and compartments shall be kept free from oil, water, waste or any obstruction that creates a slipping, tripping or fire hazard. Floors shall be properly treated to provide secure footing.

(d) The cab shall be provided with proper ventilation and with a heating arrangement that maintains a temperature of at least 50 degrees Fahrenheit 6 inches above the center of each seat in the cab.

(e) Similar locomotives with open end platforms coupled in multiple control and used in road service shall have a means of safe passage between them; no passageway is required through the nose of car body locomotives. There shall be a continuous barrier across the full width of the end of a locomotive or a continuous barrier between locomotives.

(f) Containers shall be provided for carrying fusees and torpedoes. A single container may be used if it has a partition to separate fusees from torpedoes. Torpedoes shall be kept in a closed metal container.

It is clear that there are no requirements for the installation of safety restraints or locomotive floor padding. Thus, to impose liability upon Defendant Union Pacific for the failure to install certain safety devices, Plaintiff must show that such device or equipment was an "integral or essential part of a completed locomotive." *Mosco v.*

---

1. "Laws, regulations, and orders related to railroad safety and laws, regulations, and orders related to railroad security shall be nationally uniform to the extent practicable." 49 U.S.C. § 20106.

*Baltimore & Ohio R.R.,* 817 F.2d 1088, 1091 (4th Cir.1987)(*citing Southern Ry. Co. v. Lunsford,* 297 U.S. 398, 402, 56 S.Ct. 504, 506, 80 L.Ed. 740 (1936)). An "integral or essential part of a completed locomotive" may be "a mechanical component essential to the operation of a locomotive". *McGinn v. Burlington Northern R. Co.,* 102 F.3d 295, 299 (7th Cir.1996). However, as the Seventh Circuit Court pointed out, courts have declined to deem essential certain safety devices of similar practicality or necessity as warning lights. *Id.*

Here, the Court finds that Defendant Union Pacific was in compliance with the FRSA regulations as there is nothing in the record to support the conclusion that safety restraints or locomotive floor padding are components essential to the locomotive's operation. Accordingly, the Court concludes that Defendant is entitled to summary judgment against Plaintiff's crashworthiness claims.[2] *See Miciotto v. Brown,* 2003 WL 22326559 (E.D.La. Oct.6, 2003) (finding no LIA violation for locomotive's failure to install seatbelt and safety padding).

### B. Claim for Failure to Train

■ The FRSA grants broad authority to the Secretary of Transportation over the safety training of railroad employees: "The Secretary of Transportation shall carry out, as necessary, research, development, testing, evaluation, and training for every area of railroad safety . . . ." 49 U.S.C. § 20103(a). However, the railroads retained the discretion to "prescribe additional or more stringent requirements in its operating rules, timetables, timetable

special instructions, and other special instructions." 49 C.F.R. § 218.1. Additionally, "each railroad is required to instruct its employees in operating practices." 49 C.F.R. § 218.1. As the relevant regulations only touch upon the subject matter of safety training and the railroad carriers are responsible for instructing and training its employees, the Court cannot conclude that the FRSA precludes claims for lack of employee safety training under the FELA. Accordingly, the Court looks to the substance of Plaintiff's claim.

■ Plaintiff must show that Defendant Union Pacific had a duty to train, that it breached this duty, and that this breach proximately caused Plaintiff's injuries. While Defendant has a general duty to train its employees, there is nothing here to show that Defendant breached this duty.

When Plaintiff Mark Dickerson saw that a collision was imminent, he "dive[d] onto the cab floor, followed by Dodds who then jumped on top of [Plaintiff] before the point of collision." (Plaintiff's Brief in Opposition to Summary Judgment, Dkt. # 78, p. 5). Plaintiff contends that "while there are many written rules that tell an employee what to do AFTER the occurrence of a crossing collision, such as completing accident reports, there are no written rules or procedures to instruct crew members on what action they should take, once it is determined that a collision is imminent, on how to best protect themselves from injury." (Plaintiff's Supplemental Brief, Dkt. # 87, p. 4). In other words, Plaintiff argues that he dived onto the metal floor of

2. While not directly applicable here, the Court notes that courts have found that state law claims for failure to install particular equipment were preempted by the LIA: "[W]e hold that under the [BIA] the state may not impose liability for failure to install a part or attachment of a locomotive if it is 'within the scope of the authority of the [Secretary]'

to prescribe the same part or attachment. It is within the scope of the Secretary's authority to prescribe strobe or oscillating lights for locomotives, and any state regulation is therefore preempted." *Springston v. Consolidated Rail Corp.,* 130 F.3d 241, 245 (6th Cir.1997) (*quoting Marshall v. Burlington Northern, Inc.,* 720 F.2d 1149, 1152 (9th Cir.1983)).

**915**

the locomotive and Mr. Dodds jumped on top of Plaintiff because Defendant did not train its engineers to do otherwise. The Court finds this argument unpersuasive.

Locomotive engineers and any railroad employee must utilize common sense when faced with an emergency such as an impending collision. *See, e.g., Miciotto v. Brown,* 2003 WL 22326559 (E.D.La.2003) ("In dealing with impending accidents the locomotive engineer must act with common sense in an emergency situation. In this case we see no particular form of training that Conrail should have provided that would have avoided the situation here."). Thus, Defendant did not breach its duty to train by failing to instruct its employees to utilize common sense or to avoid panicking when faced with an imminent locomotive collision.

Even if the Court were to conclude that Defendant Union Pacific breached its duty to train, Plaintiff's claim for lack of training fails as a matter of law because Plaintiff has failed to show that his injuries were proximately caused by the alleged failure to train. Indeed, Plaintiff offers nothing to indicate that any particular training would have prevented either his injuries or the conduct Plaintiff and Mr. Dodds undertook that led up to those injuries. Thus, the Court concludes that Defendant is entitled to summary judgment on Plaintiff's claim for failure to train.

## V. Conclusion

IT IS THEREFORE ORDERED that the Motion for Summary Judgment filed by Defendant Union Pacific (Dkt.# 43) shall be, and it is hereby, GRANTED in part, and DENIED in part.