In the

# United States Court of Appeals

### For the Seventh Circuit

No. 08-1116

NORFOLK SOUTHERN RAILWAY COMPANY,

*Plaintiff-Appellant,*

*v.*

CHARLES E. BOX and the other Commissioners
of the Illinois Commerce Commission,

*Defendants-Appellees.*

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 06 C 641—**Virginia M. Kendall**, *Judge.*

ARGUED DECEMBER 8, 2008—DECIDED FEBRUARY 11, 2009

Before EASTERBROOK, *Chief Judge*, and BAUER and
SYKES, *Circuit Judges*.

EASTERBROOK, *Chief Judge*. Illinois requires rail switching
yards built or substantially renovated after February 2005
to include walkways, parallel to each track, for persons
who work there. 625 ILCS 5/18c–7401.1; 92 Ill. Admin.

Code §1546.10 *et seq.* Norfolk Southern Railway contends that federal law supersedes this requirement. A federal regulation "covering the subject matter of the State requirement" preempts it. 49 U.S.C. §20106. And even if no federal regulation covers the subject, states are forbidden to adopt laws or regulations that conflict with or prevent achievement of federal objectives. See *CSX Transportation, Inc. v. Easterwood*, 507 U.S. 658 (1993). The district court determined that the national government has not adopted any regulation "covering the subject matter" of paths adjoining railroad tracks. 2007 U.S. Dist. LEXIS 23879 (N.D. Ill. Mar. 30, 2007). Then, after a bench trial, the court found that Illinois's requirements do not conflict with any federal objective. 2007 U.S. Dist. LEXIS 92367 (N.D. Ill. Dec. 17, 2007). The court entered judgment for the state, and the railroad has appealed.

Several states have laws or regulations requiring walkways in rail switching yards. Both state and federal courts are divided on the question whether these rules are compatible with federal law. Compare *Southern Pacific Transportation Co. v. California Public Utilities Commission*, 820 F.2d 1111 (9th Cir. 1987) (California rules valid), *Elston v. Union Pacific R.R.*, 74 P.3d 478 (Colo. App. 2003) (Colorado rules valid), and *CSX Transportation, Inc. v. Miller*, 159 Md. App. 123, 858 A.2d 1025 (2004) (Maryland rules valid), with *Missouri Pacific R.R. v. Texas Railroad Commission*, 948 F.2d 179 (5th Cir. 1991) (Texas rules preempted), and *Black v. Seaboard System R.R.*, 487 N.E.2d 468 (Ind. App. 1986) (Indiana rules preempted). These decisions start, as do we, with this federal law:

> Laws, regulations, and orders related to railroad safety and laws, regulations, and orders related to railroad security shall be nationally uniform to the extent practicable. A State may adopt or continue in force a law, regulation, or order related to railroad safety or security until the Secretary of Transportation (with respect to railroad safety matters), or the Secretary of Homeland Security (with respect to railroad security matters), prescribes a regulation or issues an order covering the subject matter of the State requirement. A State may adopt or continue in force an additional or more stringent law, regulation, or order related to railroad safety or security when the law, regulation, or order—
>
> > (1) is necessary to eliminate or reduce an essentially local safety or security hazard;
> >
> > (2) is not incompatible with a law, regulation, or order of the United States Government; and
> >
> > (3) does not unreasonably burden interstate commerce.

49 U.S.C. §20106 (recodified from 45 U.S.C. §434 in 1994 and amended in 2002). Norfolk Southern contends that federal regulations already cover the subject of walkways, thus preempting the state rules (for Illinois does not contend that they may be sustained under the "essentially local . . . hazard" proviso).

The major problem with the railroad's position is that no federal regulation deals with walkways. Railroads are

free to install them, or not, as they see fit. And if rail-roads may choose whether to have walkways, how then could it be said that there is a federal regulation that forbids states from acting? Norfolk Southern's answer is that federal regulations *do* specify how rail lines must be built. See 49 C.F.R. §213.103. The railroad must prepare a roadbed (or subgrade) of compacted earth. A layer of sub-ballast, made of crushed stone, goes on top of the roadbed. Then a section of sloped ballast, made from slightly smaller crushed stone, goes on top of the sub-ballast. The crossties and rails are laid on the ballast, which transmits the load to the roadbed while allowing water to drain through without turning the roadbed to mud. Federal rules set a maximum slope and minimum size of the ballast. See 49 C.F.R. §§ 213.1 to 213.241 (four parts covering track safety standards). None of these rules deals with walkways, but Norfolk Southern maintains that they "cover" the subject because any walkway is bound to affect the slope of the ballast, its drainage properties, or both.

This understanding of what it means for a federal regulation to "cover" a subject would make §20106's second sentence internally contradictory. Here is that sentence again: "A State may adopt or continue in force a law, regulation, or order related to railroad safety or security until the Secretary of Transportation (with respect to railroad safety matters), or the Secretary of Homeland Security (with respect to railroad security matters), prescribes a regulation or issues an order covering the subject matter of the State requirement." The sentence deals with state laws and regulations that are

"related to railroad safety and security" and provides that they are preempted if there is a federal regulation "covering the subject matter of the State requirement." Norfolk Southern observes that many federal regulations deal with railroad safety. It necessarily follows, from the Railway's perspective, that any state regulation "related to railroad safety" *must* be "covered" by a federal regulation. But then the sentence we have quoted is self-defeating: Instead of providing a division between state and federal spheres (in which the state rule prevails unless a federal rule covers the topic), the sentence would effectively read: "All state laws and regulations related to railroad safety and security are preempted." That is not, however, what the actual sentence says. The structure of the statute's second sentence makes sense only if the category of "covering" federal regulations is a subset of all topics related to railroad safety and security. And that is how the Supreme Court has understood the word "cover", giving it a relatively narrow scope compared with all safety-related issues. *Easterwood*, 507 U.S. at 664–65. The rules for roadbed construction and maintenance do not "cover" the subject of adjacent walkways.

Norfolk Southern relies on a policy statement as well as the roadbed regulations. In 1978 the Federal Railroad Administration told railroads to ignore any regulations that the Occupational Safety and Health Administration had prescribed for walkways, because walkways in railroad yards "are so much a part of the operating environment that they must be regulated by the agency with the primary responsibility for railroad safety." 43 Fed. Reg.

10,587 (1978). This does not sound like a statement that the regulations for roadbeds, ballast, and drainage already deal with the topic; the safety of workers *on* walkways—whether they are too steep or slippery, whether the walkways are too close to the rails and create a risk of workers being struck by moving trains, and so on—is distinct from questions about stability and drainage of tracks. The 1978 declaration suggests that the FRA contemplated issuing rules about walkways, but in the ensuing 30 years it has not done so. To the contrary, it has left in place a decision taken in 1977 that federal walkway rules should not be adopted. In 1976 the FRA had asked for comments on the question whether it should require walkways adjacent to the tracks on trestles and bridges. 41 Fed. Reg. 50,302 (1976). After receiving comments the FRA decided not to act, explaining that, "if an employee safety problem does exist because of the lack of walkways in a particular area or on a particular structure, regulation by a State agency that is in a better position to assess the local need is the more appropriate response." 42 Fed. Reg. 22,184–85 (1977). Illinois took the FRA at its word.

On to the question whether Illinois's system conflicts with federal rules or objectives. Illinois allows the railroads considerable discretion over the size, placement, and materials of the walkways. They may be made from concrete, asphalt, wood, or gravel. All that the state requires is that they be non-slippery, at least two feet wide, and slope no more than 1 inch of elevation change for 8 inches of width or length. Norfolk Southern says that wooden walkways are impractical and that

impervious materials (concrete or asphalt) would direct rainwater and snowmelt toward the tracks and over-whelm their drainage-control systems, so gravel is the only feasible material. At the bench trial, two experts testified for Norfolk Southern that even gravel walkways would cause drainage problems. The district judge found otherwise; unless that finding is clearly erroneous, the Railway must lose.

Jeffrey McCracken, Norfolk Southern's Assistant Vice President of Maintenance, was its principal expert. McCracken testified that the tracks in switching yards are located so that their centerlines are 14 feet apart. Ballast is flat at the top (supporting the crossties and rails) and slopes of 1:2 rise over run at the side, down to the sub-ballast. Only 4½ feet separate the flat areas at the top of the ballast, so the 1:2 side slope means that there is a V-shaped area between each track. Flattening that area by adding gravel to form a walkway there would interfere with drainage, McCracken testified, and thus imperil the tracks' stability by increasing the risk that mud would form—for even though Norfolk Southern constructs a drainage system of pipes and culverts under each rail yard, to improve on natural drainage, more gravel between the tracks would cover the inlets of this drainage system and hamper its effectiveness.

McCracken's testimony may well be sound, but the district judge did not believe it. She gave two reasons. First, the record contains photographs of three of Norfolk Southern's switching yards. None of the photos shows a V-shaped depression between adjacent tracks.

They show, instead, a shallow slope—less than the 1:8 required by Illinois law, so the Railway may *already* be in compliance. If the Railway operates its yards with shallow slopes, the judge observed, then it is hard to see how the state's requirements will cause safety problems. McCracken responded that the yards depicted in the photos are abnormal and experience drainage problems, but neither he nor the Railway produced photographs of yards with the V-shaped depression that he described, and neither McCracken nor any other witness produced details about the supposed drainage problems at the three depicted yards. The judge concluded that, whatever McCracken's design preferences may be, a shallow topography satisfying the Illinois rules has not caused demonstrable drainage or safety problems.

The judge's second reason was an inference from silence. Some railroads have built walkways voluntarily and others have built them under the compulsion of state regulation. California's rules have been in force for more than 20 years. What has happened in the places where walkways adjoin the tracks? Have these tracks required extra maintenance because of drainage problems? Have trains derailed, or been subject to speed limitations, because of stability problems traceable to walkways? Many thousands of miles of track must have been affected. (Norfolk Southern alone has more than 300 miles of track in its Illinois switchyards.) This facilitates statistical analysis that could identify even a small effect per mile. The judge asked McCracken and the other expert whether they had analyzed the experience of railroads that have walkways adjacent to their track. They

replied that they had not. The judge asked whether they knew about any published literature on the question; they replied that they did not. We asked the same question of the Railway's appellate counsel, who likewise responded that he did not know of any analysis of the effects of California's law, of the laws in Colorado and other states, or of walkways voluntarily constructed elsewhere. (Nor did counsel contend that other states' regulations differ in any material way from Illinois's, preventing a useful comparison.)

That's a telling omission. In *Missouri Pacific* the district judge predicted that enforcement of Texas's rules would adversely affect drainage and thus jeopardize railroad safety; the fifth circuit held that the finding was not clearly erroneous, and the upshot was a declaration that the Texas requirement was preempted. One can do only so much with projections. Talk is cheap; when it is possible to test whether a prediction has come true, then a test is essential. See *Bechtel v. FCC*, 10 F.3d 875 (D.C. Cir. 1993). Norfolk Southern did not use the opportunity to put its assessment to a test. Because nothing in this record (or any published literature we could find) suggests that the walkway regulations of other states have imperiled rail safety, or even affected railroads' costs of maintaining a constant level of safety, the district court's findings of fact are not clearly erroneous. And, given those findings, the state is entitled to enforce its walkway requirement.

According to Norfolk Southern, it is physically impossible to comply with the state's rules for some tracks in

some yards. It gives as an example tracks constructed at different heights (tracks for through trains may be two or three feet higher in elevation than adjacent switching tracks), which make it impossible to satisfy the state's 1:8 limit on walkway slope. How this presents a question of federal law is unclear. For its part Illinois insists that the Railway is overstating the problem and that the impossible is never required. For adjacent tracks at different elevations, the state says, it will be satisfied with a walkway on one side of each track, something that can be done even though there isn't room to build between the tracks a high walkway for the higher track and a low walkway for the lower track. The Railway suspects that its definition of "impossibility" will turn out to be different from the state's. But federal courts do not issue advisory opinions. Norfolk Southern must try to work these details out with the state commission. Any order that presents a question of federal law can be reviewed once a concrete dispute has ripened.

AFFIRMED