*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit Rule 206

File Name: 09a0104p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT
_____

No. 07-1736

STANLEY R. NICKELS,

     *Plaintiff-Appellant,*

  *v.*

GRAND TRUNK WESTERN RAILROAD, INC.,

     *Defendant-Appellee.*

Nos. 07-1736/2437

No. 07-2437

DONALD C. COOPER,

     *Plaintiff-Appellant,*

  *v.*

CSX TRANSPORTATION, INC.,

     *Defendant-Appellee.*

Appeal from the United States District Court
for the Eastern District of Michigan at Detroit.
Nos. 06-11846; 05-73392—Robert H. Cleland,
Paul D. Borman, District Judges.

Argued: July 31, 2008

Decided and Filed: March 18, 2009

Before: SILER, BATCHELDER, and ROGERS, Circuit Judges.

_____

**COUNSEL**

**ARGUED:** Robert B. Thompson, HARRINGTON, THOMPSON, ACKER & HARRINGTON, Chicago, Illinois, Kirk E. Karamanian, O'BRYAN, BAUN, COHEN, KUEBLER & KARAMANIAN, Birmingham, Michigan, for Appellants. Andrew E. Tauber, MAYER BROWN, Washington, D.C., for Appellees. **ON BRIEF:** Robert B. Thompson, Laurence C. Acker, HARRINGTON, THOMPSON, ACKER & HARRINGTON, Chicago, Illinois, Kirk E. Karamanian, O'BRYAN, BAUN, COHEN, KUEBLER & KARAMANIAN, Birmingham, Michigan, for Appellants. Andrew E. Tauber, MAYER BROWN, Washington, D.C., Evan Mark Tager, MAYER BROWN, Chicago, Illinois, Richard A. Dietz, Michael J. Liddane, FOSTER, MEADOWS & BALLARD, Detroit, Michigan, James

R. Carnes, ANSPACH MEEKS ELLENBERGER, Toledo, Ohio, for Appellees. James L. O'Connell, LINDHORST & DREIDAME CO., Cincinnati, Ohio, for Amicus Curiae.

BATCHELDER, J., delivered the opinion of the court, in which SILER, J., joined. ROGERS, J. (pp. 11-15), delivered a separate dissenting opinion.

———————————

**OPINION**

———————————

ALICE M. BATCHELDER, Circuit Judge.  In this consolidated action, Stanley Nickels and Donald Cooper appeal entries of summary judgment on their Federal Employers' Liability Act ("FELA") claims.  These former railway employees allege injuries caused by years of walking on oversized track ballast.  The district courts below held that a Federal Railway Safety Act ("FRSA") regulation covers the issue of ballast size, precluding plaintiffs' negligence actions.  We affirm.

**I.**

Nickels and Cooper both claim that their former employers failed to provide a safe working environment by using large mainline ballast — instead of smaller yard ballast — underneath and adjacent to tracks receiving heavy foot traffic.  Track ballast is the stone or other material placed underneath and around railroad tracks to provide the structural support, drainage, and erosion protection necessary for safe rail travel.  The two main sizes of track ballast are mainline ballast, which can be up to 2 inches in diameter, and yard ballast, which is typically 1 inch in diameter or smaller.  The American Railway Engineering and Maintenance of Way Association ("AREMA")[1] recommends that railroads use yard ballast in areas where there is heavy foot traffic because walking on mainline ballast is more strenuous and provides for uneven footing.

Nickels began working for Grand Trunk in 1976.  His job required him to walk on track ballast so that he could, among other things, conduct switching operations

———————————

[1]AREMA is an engineering support association whose mission is the development and advancement of both technical and practical knowledge and recommended practices pertaining to the design, construction, and maintenance of railway infrastructure.  AREMA standards are merely recommendations and are non-binding.

(move railcars from one track to another). Although most of this walking was done on yard ballast, a stint from 2002 to 2004 at Grand Trunk's Lansing, Michigan railyard required Nickels to walk on mainline ballast. In early 2004 Nickels began experiencing pain and discomfort in his feet, especially his big toes. Ultimately, Nickels had to have surgery on both feet — his left foot in January 2005, and his right foot in April 2005. Nickels unsuccessfully attempted to return to work and has been on permanent restriction since October 2005.

Cooper began working for CSX in 1967. His duties required him to walk on mainline ballast. In 2000, Cooper sought treatment for stiffness and pain in his right leg, from his hip down to his toes. By February 2003, Cooper was no longer able to perform his job responsibilities. He eventually was diagnosed with avascular necrosis, "a cellular death of bone components due to interruption of the blood supply . . . resulting in bone destruction, pain, and loss of joint function."

Nickels and Cooper separately sued their former employers under the FELA, 45 U.S.C. § 51, *et seq.* The railroads moved for summary judgment, arguing that the FRSA, 49 U.S.C. § 20101, *et seq.*, precluded the plaintiffs' FELA claims. The district courts granted the motions, concluding that allowing the plaintiffs to advance their FELA claims would undermine the FRSA's express intent to achieve national uniformity in railroad safety regulations.[2] Nickels and Cooper timely appealed, and we consolidated their actions to consider the preclusion issue common to both suits.

## II.

We review de novo a district court's grant of summary judgment, using the same standard applied by the district court. *Williams v. Mehra*, 186 F.3d 685, 689 (6th Cir. 1999) (en banc). Summary judgment is proper if "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to

---

[2]In Cooper's case, the district court alternatively held that Cooper's claim was barred by the statute of limitations because he filed suit more than three years after knowing the likely cause of his injury. Because Cooper's claim is precluded by the FRSA, we do not reach that issue.

a judgment as a matter of law." Fed. R. Civ. P. 56(c). We must review all the evidence, facts, and inferences in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Whether a federal law preempts a state law or precludes another federal law is a question of law which we review de novo. *See Nye v. CSX Transp., Inc.*, 437 F.3d 556, 560 (6th Cir. 2006) (citing *Shanklin v. Norfolk S. Ry. Co.*, 369 F.3d 978, 985 (6th Cir. 2004) (overruled on other grounds)).

## III.

This case requires us to examine the interplay of two federal statutes, both of which were designed to promote railway safety. The FELA makes a railroad liable to its employees injured "by reason of any defect or insufficiency, due to its negligence, in its cars, engines, appliances, machinery, track, roadbed, works, boats, wharves, or other equipment." 45 U.S.C. § 51. The statute provides a "cause of action sounding in negligence[.] . . . Absent express language to the contrary, the elements of a FELA claim are determined by reference to the common law." *Norfolk S. Ry. Co. v. Sorrell*, 549 U.S. 158, 165-66 (2007).

The FRSA's purpose is "to promote safety in every area of railroad operations and reduce railroad-related accidents and incidents." *Norfolk S. Ry. Co. v. Shanklin*, 529 U.S. 344, 347 (2000) (quoting 49 U.S.C. § 20101). The FRSA authorizes the Secretary of Transportation ("Secretary") to "prescribe regulations and issue orders for every area of railroad safety." *Id*. (quoting 49 U.S.C. § 20103(a)). Under the FRSA's express preemption provision, "[l]aws, regulations, and orders related to railroad safety . . . shall be nationally uniform to the extent practicable." 49 U.S.C. § 20106(a)(1). "A State may adopt or continue in force a law, regulation, or order related to railroad safety . . . until the Secretary of Transportation . . . prescribes a regulation or issues an order covering the subject matter of the State requirement." 49 U.S.C. § 20106(a)(2). A state-law negligence action is "covered" and therefore preempted if a FRSA regulation "substantially subsume[s]" the subject matter of the suit. *CSX Transp., Inc. v.*

*Easterwood*, 507 U.S. 658, 664 (1993). This provision explicitly preempts only State laws, regulations, and orders; it does not mention other federal safety standards.

We must consider: (1) whether a FELA claim is precluded if the same claim would be preempted by the FRSA if brought as a state-law negligence action; and (2) if so, whether the subject of these plaintiffs' claims has been covered by a FRSA regulation. We answer both questions in the affirmative.

### A.

Two of our sister circuits have held that the uniformity demanded by the FRSA "can be achieved only if [federal rail safety regulations] are applied similarly to a FELA plaintiff's negligence claim and a non-railroad-employee plaintiff's state law negligence claim."[3] *Lane v. R.A. Sims, Jr., Inc.*, 241 F.3d 439, 443 (5th Cir. 2001); *see also Waymire v. Norfolk & W. Ry. Co.*, 218 F.3d 773, 776 (7th Cir. 2000).

> Dissimilar treatment of the claims would have the untenable result of making the railroad safety regulations established under the FRSA virtually meaningless: "The railroad could at one time be in compliance with federal railroad safety standards with respect to certain classes of plaintiffs yet be found negligent under the FELA with respect to other classes of plaintiffs for the very same conduct."

*Id.* (quoting *Waymire v. Norfolk & W. Ry. Co.*, 65 F. Supp. 2d 951, 955 (S.D. Ind. 1999), *aff'd*, 218 F.3d 773 (7th Cir.2000)).

We agree with this analysis. Although the courts in *Lane* and *Waymire* addressed FELA claims of unsafe train speed in light of FRSA speed-limit regulations, the FRSA's concern for uniformity leads us to reach the same conclusion regarding ballast regulations. And while railroads may face a lesser likelihood of state-law claims

---

[3]Other courts also have reached this conclusion. *See, e.g.*, *Dickerson v. Staten Trucking, Inc.*, 428 F. Supp. 2d 909, 913-14 (E.D. Ark. 2006); *Major v. CSX Transp., Inc.*, 278 F. Supp. 2d 597, 608-10 (D. Md. 2003); *In re Amtrak "Sunset Ltd." Train Crash*, 188 F. Supp. 2d 1341, 1349 (S.D. Ala. 2000); *Rice v. Cincinnati, New Orleans & Pac. Ry. Co.*, 955 F. Supp. 739, 740-41 (E.D. Ky. 1997); *Thirkill v. J.B. Hunt Transp., Inc.*, 950 F. Supp. 1105, 1107 (N.D. Ala. 1996); *Norris v. C. of Ga. R.R. Co.*, 635 S.E.2d 179, 182-83 (Ga. Ct. App. 2006); *CSX Transp., Inc. v. Miller*, 858 A.2d 1025, 1047-49 (Md. Ct. Spec. App. 2004); *Elston v. Union Pac. R.R. Co.*, 74 P.3d 478, 486-88 (Colo. Ct. App. 2003); *Key v. Norfolk S. Ry. Co.*, 491 S.E.2d 511, 513-14 (Ga. Ct. App. 1997). *But see Grimes v. Norfolk S. Ry. Co.*, 116 F. Supp. 2d 995, 1002-03 (N.D. Ind. 2000); *Earwood v. Norfolk S. Ry. Co.*, 845 F. Supp. 880, 889-91 (N.D. Ga. 1993).

alleging negligent ballast composition, any exposure to conflicting standards undermines uniformity. *See Norris v. C. of Ga. R.R. Co.*, 635 S.E.2d 179, 183 (Ga. Ct. App. 2006). The plaintiffs' claims are precluded by the FRSA if they would have been preempted if brought by a non-employee under state law.

**B.**

Under the FRSA's preemption provision, a plaintiff can bring an action under state law unless the Secretary has prescribed a regulation or issued an order "covering the subject matter of the State requirement." 49 U.S.C. § 20106. The Secretary has promulgated a regulation on ballast:

> Unless it is otherwise structurally supported, all track shall be supported by material which will —
>
> (a) Transmit and distribute the load of the track and railroad rolling equipment to the subgrade;
>
> (b) Restrain the track laterally, longitudinally, and vertically under dynamic loads imposed by railroad rolling equipment and thermal stress exerted by the rails;
>
> (c) Provide adequate drainage for the track; and
>
> (d) Maintain proper track crosslevel, surface, and alinement.

49 C.F.R. § 213.103. The question is whether this regulation covers the subject matter of the plaintiffs' claims.

The gist of these claims is that the railroads used large mainline ballast in areas where smaller yard ballast would have sufficed — such as passing sidings, switch leads, and interior yard tracks. The regulation, however, makes no distinction between mainline and secondary track; it provides that "*all* track shall be supported by material" able to transmit and distribute track and equipment loads, restrain the track under dynamic loads and thermal stress, provide adequate drainage, and maintain proper track crosslevel, surface, and alinement. *Id.* (emphasis added). Rather than prescribing ballast sizes for certain types or classes of track, the regulation leaves the matter to the

railroads' discretion so long as the ballast performs the enumerated support functions. In this way, the regulation substantially subsumes the issue of ballast size.

In *Easterwood*, the Supreme Court held that a federal regulation limiting train speed to 60 miles per hour for a particular class of grade crossings preempted a state tort claim that a train operating under the speed limit was nonetheless going unreasonably fast. 507 U.S. at 673-75. The Court explained:

> On their face, the provisions of § 213.9(a) address only the maximum speeds at which trains are permitted to travel given the nature of the track on which they operate. Nevertheless, related safety regulations adopted by the Secretary reveal that the limits were adopted only after the hazards posed by track conditions were taken into account. Understood in the context of the overall structure of the regulations, the speed limits must be read as not only establishing a ceiling, but also precluding additional state regulation of the sort that respondent seeks to impose on petitioner.

*Id.* at 674. The Court noted that because automobile driver conduct is "the major variable in grade crossing accidents," the Secretary of Transportation relied heavily on the type of warning signals and other safety devices present at a class of grade crossings to determine the appropriate speed limit for that class. *Id.* at 674-75. "Read against this background," the Court concluded, "§ 213.9(a) should be understood as covering the subject matter of train speed *with respect to track conditions, including the conditions posed by grade crossings*." *Id.* at 675 (emphasis added). In other words, the Secretary had already determined what was a reasonable speed for that class of grade crossings.

Likewise, in § 213.103 the Secretary has directed railroads to install ballast sufficient to perform key support functions under the conditions applicable to the track. Although these conditions necessarily are track-specific and are not classified as were the grade crossings in *Easterwood*, they effectively narrow the universe of material the railroad may use in a given situation. The regulation thus determines what is a reasonable ballast composition and size for a particular track.

The plaintiffs argue that their theory of recovery "is obviously consistent and compatible with [the railroads'] obligations under the FRSA ballast regulations." This

is so, they contend, because the railroads could have used smaller ballast in areas of heavy foot traffic without violating their duty to provide a stable track. Even if this proposition is true, the fact that track stability and safe footing are not mutually exclusive does not mean that § 213.103 has not covered the subject of ballast size. Preclusion and preemption under the FRSA are not limited to situations where the federal or state standard is incompatible with a regulation. If they were, there would be no need for the second savings clause of 49 U.S.C. § 20106(a)(2), under which "a State may . . . continue in force *an additional or more stringent* law . . . related to railroad safety . . . when the law . . . *is not incompatible* with a law, regulation, or order of the United States Government . . . ." (Emphasis added).

The plaintiffs nonetheless argue that Congress has amended the FRSA's preemption provision to require "incompatibility" as a "second test" for preemption. In 2007 Congress added a new subsection to 49 U.S.C. § 20106, which provides in part:

> Nothing in this section shall be construed to preempt an action under State law seeking damages for personal injury, death, or property damage alleging that a party . . . has failed to comply with a State law, regulation, or order that is not incompatible with subsection (a)(2).

49 U.S.C. § 20106(b)(1). This subsection does not impose an incompatibility requirement for preemption or preclusion. In referencing § 20106(a)(2), it clarifies that a state may adopt or continue in force "a law, regulation, or order related to railroad safety" — including a state cause of action for "damages for personal injury, death, or property damage" — so long as the requirements of § 20106(a)(2) are satisfied.[4] Under

---

[4]That subsection provides in full:

(2) A State may adopt or continue in force a law, regulation, or order related to railroad safety or security until the Secretary of Transportation (with respect to railroad safety matters), or the Secretary of Homeland Security (with respect to railroad security matters), prescribes a regulation or issues an order covering the subject matter of the State requirement. A State may adopt or continue in force an additional or more stringent law, regulation, or order related to railroad safety or security when the law, regulation, or order —

(A) is necessary to eliminate or reduce an essentially local safety or security hazard;

(B) is not incompatible with a law, regulation, or order of the United States Government; and

(C) does not unreasonably burden interstate commerce.

§ 20106(a)(2), once the Secretary has issued a regulation covering the subject matter of a state law, regulation, or order related to railroad safety, that state law, regulation, or order is preempted unless it is necessary to address an essentially local safety hazard, is not incompatible with the federal regulation, and does not unreasonably burden interstate commerce. In other words, under both §§ 20106(a)(2) and (b)(1), incompatibility is a prerequisite — not for preemption or preclusion, but for application of the savings clause.

The plaintiffs note that 49 C.F.R. § 213.103 does not address "what constitutes a reasonably safe walkway for railroad employees performing their duties adjacent to the track."[5] This suggests that the plaintiffs allege negligence in the railroads' use of oversized ballast in areas completely separate from those where track stability and support are concerned. Such an allegation, however, does not appear in either of their complaints. Nickels alleges that "railroad 'ballast' was used by the defendant *to support the railroad track* structures owned, maintained and used by the defendant in areas where the plaintiff was required to perform his assigned duties." (emphasis added). In his complaint, Cooper simply alleges that "Defendant did provide Plaintiff with an unsafe place to work by requiring ambulation on unsuitable ballast and driving trucks there over along with other uneven conditions, resulting in injury." But in his response to CSX Transportation's motion for summary judgment, Cooper admits that "[t]he purpose of ballast is to provide support and adequate drainage to the track structure," and suggests that smaller ballast would have been appropriate "along the main tracks, ladder tracks, and switching leads," "as an overlay or along a berm or shoulder running parallel to mainline tracks," and "as fill in between tracks as well as on the outside of tracks where employees are expected to work." *Id.* at 155. Even to the extent that the plaintiffs argue oversized ballast was used "along," "adjacent to," or "parallel to" the track, they

---

49 U.S.C. § 20106(a)(2).

[5] *See also Norfolk S. Ry. Co. v. Box*, ___ F.3d ___, No. 08-1116, 2009 WL 322151, at *3 (7th Cir. 2009) ("[T]he safety of workers on walkways . . . is distinct from questions about stability and drainage of tracks."); *Grimes v. Norfolk S. Ry. Co.*, 116 F. Supp. 2d 995, 1002-03 (N.D. Ind. 2000) (§ 213.103 does not address employee walkways); *Earwood v. Norfolk S. Ry. Co.*, 845 F. Supp. 880, 891 (N.D. Ga. 1993) (same); *CSX Transp., Inc. v. Miller*, 858 A.2d 1025, 1050-52 (Md. Ct. Spec. App. 2004) (same).

do not contend that the ballast in those areas was not being used for stability under § 213.103.

## IV.

Because 49 C.F.R. § 213.103 covers the issue of ballast size and precludes the plaintiffs' FELA claims, we **AFFIRM** the grants of summary judgment to the railroads.

———————————

**DISSENT**

———————————

ROGERS, Circuit Judge, dissenting.  The plaintiffs' FELA claims are not categorically precluded by the FRSA in this case.  Like the majority, I agree with the well-reasoned holdings from other jurisdictions that a railway-safety claim that would be preempted by the FRSA if brought by a nonemployee under state tort law, would necessarily be precluded by the FRSA if brought by a railroad employee under the FELA.  *See Lane v. R.A. Sims, Jr., Inc.*, 241 F.3d 439, 443-44 (5th Cir. 2001); *Waymire v. Norfolk & W. Ry. Co*., 218 F.3d 773, 775-76 (7th Cir. 2000).  However, under the Supreme Court's FRSA federal preemption analysis, the FRSA regulations that require adequate physical support for rails do not sufficiently imply that railroads may use any grade of sufficiently supportive ballast, no matter the risk to employees who must walk on the ballast.  I therefore respectfully dissent.

The Supreme Court's analysis in *CSX Transportation, Inc. v. Easterwood*, 507 U.S. 658 (1993), the seminal FRSA preemption case, strongly suggests that the FRSA regulation in this case does not preclude an FELA action.  The regulation, while putting requirements on railroads regarding adequate physical support for trains, in no way implies that such physical support may be obtained without regard to harms to workers from the roughness of the walking surface of the ballast.  This is in direct contrast with the situation in *Easterwood*, where the Supreme Court relied on just such an implication.

Nothing in 49 C.F.R. § 213.103 or any related regulations addresses the issue of trackside walkways and ballast size.  The regulations generally require adequate support for the trains, and advert in no way to the nature of a walking surface.  Section 213.103 provides as follows:

> Unless it is otherwise structurally supported, all track shall be supported by material which will –
> (a) Transmit and distribute the load of the track and railroad rolling equipment to the subgrade;

(b) Restrain the track laterally, longitudinally, and vertically under dynamic loads imposed by railroad rolling equipment and thermal stress exerted by the rails;

(c) Provide adequate drainage for the track; and

(d) Maintain proper track crosslevel, surface, and alinement.

Sections 213.33 and 213.37 then address roadbed drainage and trackside vegetation. Further regulations set forth highly technical requirements for track geometry. *See* §§ 213.57 (curves; elevations and speed limitations), 213.63 (track surface), 213.55 (alinement). All of these provisions are primarily concerned with providing a stable track and roadbed.[1] The provisions are essentially silent with respect to conditions of the walkways directly adjacent to the track.[2]

Plaintiffs point to nothing in the regulation implicitly permitting the railroad to use whatever size ballast it wants as long as there is adequate support. This is in direct contrast with what the Supreme Court relied upon in *Easterwood*. In that case the Supreme Court held that a state tort action for wrongful death, to the extent that it was based on a train's traveling at excessive speed, was preempted by FRSA train-speed regulations. *Easterwood*, 507 U.S. at 676. The regulations relied upon by the railroad limited the train's speed to 60 m.p.h. for the class-four crossing at which the collision with the decedent's truck took place. *Id.* at 673. The Supreme Court did *not* simply say that because the defendant's train was going under the speed limit, and because the claim was for excessive speed, the claim was preempted. Instead, the Court was at pains to infer that the speed limit was not only a prohibition on going over 60 m.p.h., but also a permission to go up to 60 m.p.h. "Understood in the context of the overall structure of the regulations, the speed limits must be read as not only establishing a ceiling, but also

---

[1]This is not to suggest that § 213.103 is not concerned with employee safety. The FRA adopts all regulations with the objective of "protecting persons along the right-of-way and railroad employees" in mind. 43 Fed. Reg. 10,583, 10,585 (Mar. 14, 1978); *see also Lane*, 241 F.3d at 444 ("Railroad operations *cannot* be conducted *without* railroad employees; therefore, it seems obvious that railroad employee safety is one of the 'area[s] of railroad operations' addressed by the statute and regulations." (quoting 49 U.S.C. § 20101)). By preventing train derailments, the FRA is making for much safer employee conditions.

[2]The only provision that hints at concern with walkways is § 213.37(c), which requires that vegetation on or immediately adjacent to the roadbed be controlled so that it does not "[i]nterfere with railroad employees performing normal trackside duties."

precluding additional state regulation of the sort that respondent seeks to impose on petitioner." *Id.* at 674. The Court came to this conclusion by the following reasoning:

> Because the conduct of the automobile driver is the major variable in grade crossing accidents, and because trains offer far fewer opportunities for regulatory control, the safety regulations established by the Secretary concentrate on providing clear and accurate warnings of the approach of oncoming trains to drivers. Accordingly, the Secretary's regulations focus on providing appropriate warnings given variations in train speed. [The Supreme Court here provided several examples in support.]
> Read against this background, [the FRSA speed limit regulation] should be understood as covering the subject matter of train speed with respect to track conditions, including the conditions posed by grade crossings.

*Id.* In other words, the focus in the regulations on grade crossing warnings implied that trains could freely proceed at a speed up to the regulatory limit. Imposing a lower limit would interfere with that regulatory balance.

In contrast, the regulation here cannot be viewed as giving defendants permission to comply in any manner they desire. No interrelation between physical support for trains and the surface of walkways has been identified in the regulatory scheme in this case. Whereas in *Easterwood* the Court found in effect that the regulatory scheme demanded that safety from crossway collisions come primarily from signals rather than slow speed, there is no basis for us to read that adequate physical support for trains and safe walkways for workers are interests that have been counterbalanced to permit the use of any grade of surface ballast on walkways.

This case then is no different from one in which a railroad worker brings an FELA suit for being injured by debris when ballast is carelessly unloaded into place, or an FELA suit for injury from worker contact with a carcinogenic herbicide used to keep plants from growing on ballast. Nothing in the ballast-support regulations contemplates that there can categorically be no negligence with respect to a railroad's construction or maintenance of ballast.

A number of courts have accordingly held that FRSA regulations do not preclude FELA suits based on ballast walkways. *See Wilcox v. CSX Transp., Inc.*, No. 1:05-CV-107, 2007 WL 1576708 (N.D. Ind. May 30, 2007); *Grimes v. Norfolk S. Ry. Co.*, 116 F. Supp.2d 995 (N.D. Ind. 2000); *Elston v. Union Pac. R.R. Co.*, 74 P.3d 478 (Colo. Ct. App. 2003);[3] *see also S. Pac. Transp. Co. v. Pub. Utils. Comm'n*, 647 F. Supp. 1220 (N.D. Cal. 1986), *aff'd per curiam*, 820 F.2d 1111 (9th Cir. 1987).

This of course is not to say that a jury may require an action that violates the FRSA regulation. If, for instance, a successful FELA claim effectively created "a walkway requirement or other safety regulation that hindered or prevented a railroad from complying simultaneously with an FRA regulation designed to enhance safety in a different area," *Missouri Pacific Railroad Co. v. Railroad Commission of Texas*, 833 F.2d 570, 574 (5th Cir. 1987), FELA relief would clearly be precluded on that ground. A jury verdict for the plaintiff cannot impose "'different or higher standards' of track construction by superimposing the walkway requirement on federal track . . . structure regulations." *See id.* at 575. In that instance, the railroad could not comply both with the judgment against it on the FELA claim and with the FRSA regulation.

But nothing like that has yet been shown by defendants in this case. Unlike the regulation at issue in *Easterwood*, the FRSA regulation is a floor that guarantees a minimum level of safety and there are many ways that the railroad can meet the standard. The manner in which the railroad complies with the standard may involve using ballast that is more or less conducive to creating safe walkways for railroad employees. While compliance with the FRSA regulation is evidence of due care, it "does *not* preclude finding negligence if *reasonable* railroads would have taken additional precautions to prevent injury to their employees." *Lane*, 241 F.3d at 442.

---

[3]I recognize that *Norris v. Central of Georgia Railroad Co.*, 635 S.E.2d 179 (Ga. Ct. App. 2006), is to the contrary, and that some non-FELA cases have reasoning that is in some tension with this analysis. *See Norfolk & W. Ry. Co. v. Burns*, 587 F.Supp. 161, 170 (E.D. Mich. 1984) (concluding that walkways are a part of track structure and thus immune from additional state regulation); *Black v. Seaboard Sys. R.R.*, 487 N.E.2d 468, 469 (Ind. Ct. App. 1986) (concluding that walkways are a part of track structure and thus covered by FRSA regulations); *Black v. Balt. & Ohio R.R. Co.*, 398 N.E.2d 1361, 1363 (Ind. Ct. App. 1980) (deciding that the regulations, "although not specifically dealing with" muddy walkways, regulated the entire track structure).

Because defendants have not shown that the regulation would preempt state actions under *Easterwood*'s standard, it similarly does not preclude FELA relief.