**Norman McCAIN, Plaintiff,**

v.

**CSX TRANSPORTATION, INC., Defendant.**

Civil Action No. 06–387.

United States District Court, E.D. Pennsylvania.

April 23, 2010.

Thomas J. Joyce, III, Law Office of Thomas J. Joyce, III, Mt. Laurel, NJ, for Plaintiff.

Angela Allen Cronk, Burns, White and Hickton, West Conshohocken, PA, Brian M. Mancos, T. H. Lyda, Burns White Hickton LLC, Pittsburgh, PA, for Defendant.

## MEMORANDUM

EDUARDO C. ROBRENO, District Judge.

Before the Court is Defendant's motion for summary judgment (doc. no. 24) and Plaintiff's response thereto (doc. no. 25). For the reasons set forth below, Defen-dant's motion for summary judgment will be granted in part and denied in part.

## I. BACKGROUND

For purposes of this motion, the facts cited below are either undisputed or viewed in the light most favorable to Plaintiff.

On January 27, 2006, Plaintiff Norman W. McCain ("Plaintiff") initiated this personal injury action against his employer Defendant CSX Transportation, Inc. ("Defendant"), after Plaintiff was injured during the scope of his employment, pursuant to the Federal Employers' Liability Act ("FELA"), 45 U.S.C. §§ 51–60, the Federal Safety Appliance Acts, 45 U.S.C. §§ 1–16, and the Boiler Inspection Acts, 45 U.S.C. §§ 22–34. Plaintiff seeks an award of $150,000 compensatory damages. See Pl.'s Compl.

In his complaint, Plaintiff alleges that while working as a machinist for Defendant, a common carrier by railroad operating a line and system of railroad throughout the United States, he was exposed to "excessive and harmful cumulative trauma to his knees, arms, and hands," allegedly resulting in occupational repetitive stress syndrome. See id. ¶¶ 4, 8; see also Def.'s Mot. Summ. J. Ex. B. 13:3–10, McCain Dep. (Plaintiff admitted that injuries are limited to his right knee).

Plaintiff was employed by Defendant as a machinist in Waycross, Georgia from approximately October 1969 through January 2005. See Def.'s Mot. Summ. J. ¶ 2. Further, Plaintiff alleges that his injuries were caused, in whole or in part, within the scope of his employment by Defendant's fourteen "negligent" acts, including but not limited to failure to provide: a safe place to work, timely and adequate ergonomics programs, periodic testing of physical effects of work, and adequate warning

as to the hazardous working conditions. *Id.* ¶ 11.

On February 15, 2006, Defendant filed its answer, admitting Plaintiff's allegations in part and denying them in part. Defendant admits that it is a successor in interest to the Seasboard Coast Line Railroad and does business in Philadelphia, Pennsylvania. *See* Def.'s Answer ¶ 2. However, Defendant asserts affirmative defenses, including but not limited to, failure to state a claim upon which relief may be granted, contributory negligence, statute of limitations, statutory limitations of recovery under FELA, and improper venue.[1]

On August 28, 2009, Defendant filed a motion for summary judgment, to which Plaintiff responded on September 11, 2009. *See* doc. nos. 24, 25, respectively. The issue is now properly before the Court.

## II. *JURISDICTION*

This Court has jurisdiction pursuant to the FELA, 45 U.S.C. §§ 51–60,[2] the Federal Safety Appliances Act, 45 U.S.C. §§ 1–16, and the Boiler Inspection Acts, 45 U.S.C. §§ 22–34.

## III. *LEGAL STANDARD*

### A. *Motion for summary judgment under Rule 56*

Summary judgment is appropriate if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). The "mere existence" of disputed

facts will not result is denial of a motion for summary judgment; father there must be "a genuine issue of material fact." *Am. Eagle Outfitters v. Lyle & Scott Ltd.*, 584 F.3d 575, 581 (3d Cir.2009) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). A fact is "material" if proof of its existence or non-existence might affect the outcome of the litigation and a dispute is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Liberty Lobby*, 477 U.S. at 248, 106 S.Ct. 2505.

"After making all reasonable inferences in the nonmoving party's favor, there is a genuine issue of material fact if a reasonable jury could find for the nonmoving party." *Pignataro v. Port Authority of N.Y. and N.J.*, 593 F.3d 265, 268 (3d Cir. 2010) (citing *Reliance Ins. Co. v. Moessner*, 121 F.3d 895, 900 (3d Cir.1997)). While the moving party bears the initial burden of showing the absence of a genuine issue of material fact, the non-moving party "may not rely merely on allegations of denials in its own pleading; rather its response must-by affidavits or as otherwise provided in [Rule 56]—set out specific facts showing a genuine issue for trial." Fed.R.Civ.P. 56(e)(2).

Furthermore, in order for a court to grant summary judgment in a FELA negligence case, the defendant must demonstrate the absence of a genuine issue of material fact on at least one of the required elements for negligence and that

---

1. On March 9, 2007, Defendant filed a motion to transfer venue (doc. no. 10), which Plaintiff opposed (doc. nos. 11–12). This Court denied Defendant's motion to transfer venue without prejudice on October 3, 2007 (doc. no. 13).

2. Section 51 provides:
   Under this act [45 USCS §§ 51 et seq.] an action may be brought in a circuit [district] court of the United States, in the district of the residence of the defendant, or in which the cause of action arose, or in which the defendant shall be doing business at the time of commencing such action. The jurisdiction of the courts of the United States under this act [45 USCS §§ 51 et seq.] shall be concurrent with that of the courts of the several States.
   45 U.S.C. § 51.

the issue should be resolved in its favor as a matter of law. *See, e.g., Smolsky v. Consolidated Rail Corp.,* 780 F.Supp. 283, 290 (E.D.Pa.1991); *Lauria v. Nat'l R.R. Passenger Corp.,* No. 95–1561, 1997 WL 83767, at *3 (E.D.Pa. Feb. 20, 1997). "[A] FELA plaintiff need only present a minimum amount of evidence in order to defeat a summary judgment motion." *Hines v. CONRAIL,* 926 F.2d 262, 268 (3d Cir. 1991). Further, in FELA cases, summary judgment is appropriate "only in those extremely rare instances where there is zero probability either of employer negligence of that any such negligence contributed to the injury of an employee ... " *Id.* (internal quotation omitted).

### B. *Federal Employers' Liability Act*

FELA provides that "[e]very common carrier by railroad ... shall be liable in damages to any person suffering injury while he is employed by such carrier ... for such injury or death resulting in whole or in part from the negligence of any of the officers, agents, or employees of such carrier...." 45 U.S.C. § 51 (1986).

However, FELA is not a workers' compensation statute and does not require railroad employers to insure the safety of their employees. *See, e.g., Consolidated Rail Corp. v. Gottshall,* 512 U.S. 532, 543, 114 S.Ct. 2396, 129 L.Ed.2d 427 (1994); *Inman v. Baltimore & Ohio R.R. Co.,* 361 U.S. 138, 140, 80 S.Ct. 242, 4 L.Ed.2d 198 (1959). Nevertheless, the Supreme Court has liberally construed FELA to further the statute's broad remedial goal. *Gottshall,* 512 U.S. at 543, 114 S.Ct. 2396; *see Outten v. Nat'l R. Passenger Corp.,* 928 F.2d 74, 76 (3d Cir.1991) ("[A]n employee can recover under the FELA so long as the employer's negligence 'played any part, even the slightest, in producing the injury or death for which damages are sought.' ") (internal citation omitted).

### IV. *ANALYSIS*

In his motion for summary judgment, Defendant argues that summary judgment is warranted on Plaintiff's claims of personal injury under FELA because (1) Plaintiff failed to file his lawsuit within the three year statute of limitations; and (2) Plaintiff's claims regarding uneven or unlevel ballast are preempted by federal law. *See* Def.'s Mot. Summ. J.

Plaintiff, in opposition, argues that his injury as to his right knee is within the applicable statute of limitations and there is no federal preclusion in regards to ballast claims brought pursuant to FELA. Plaintiff argues that the claims that Defendant failed to provide Plaintiff with a reasonably safe place to work are meritorious. Further, Plaintiff contends that he is entitled to present evidence of the nature, condition, and/or size of Defendant's ballast under FELA, in proving the unsafe nature of the work environment. *See* Pl.'s Opp'n to Def.'s Mot. Summ. J. (doc. no. 25).

### A. *Statute of Limitations*

The statute of limitations may be raised by a Rule 6(c) motion. When a statute of limitations begins to run is ordinarily a question of fact. When the facts are established, the inquiry becomes a question of law. *Dole v. Local 427,* 894 F.2d 607, 609 (3d Cir.1990).

Pursuant to § 56 of FELA, a railroad employee must bring an action "within three years from the day the cause of action accrued." 45 U.S.C. § 56. Under the "discovery rule," a plaintiff's cause of action accrues when the injury manifests itself. *Urie v. Thompson,* 337 U.S. 163, 170, 69 S.Ct. 1018, 93 L.Ed. 1282 (1949) (developing the "discovery rule" in occupational disease cases). However, for injuries that occur over time, such as repeti-

tive stress injuries, the specific date of injury is difficult to determine. In this situation, the Supreme Court found that "when the specific date of injury cannot be determined because an injury results from continual exposure to a harmful condition over a period of time, a plaintiff's cause of action accrues when the injury manifests itself." *Czyzewski v. CONRAIL*, 1997 WL 9791, *2, 1997 U.S. Dist. LEXIS 87, *6 (E.D.Pa.1997) (citing *Urie*, 337 U.S. at 170, 69 S.Ct. 1018) (finding that a plaintiff's cause of action accrues when she knew or should have known about the injury and causation). Thus, the cause of action for a repetitive stress injury, under FELA, "accrues when a plaintiff has knowledge of both the existence and cause of his injury." *Id.* (citing *United States v. Kubrick*, 444 U.S. 111, 100 S.Ct. 352, 62 L.Ed.2d 259 (1979)).[3]

On January 30, 2003, Plaintiff first visited Dr. Randal F. O'Brien, an orthopedic specialist, after experiencing pain in his left knee. *See* Pl.'s Mem. in Opp' n *13. Dr. O'Brien diagnosed Plaintiff with bilateral degenerative joint disease on February 13, 2003. *Id.* Plaintiff filed this FELA claim on January 27, 2006.

In this case, Plaintiff bears the ultimate burden of establishing that he filed suit within three years of both the date he was aware of his injury and the date the cause of his injury was or should have been discovered. *See Kichline v. Consolidated Rail Corp.*, 800 F.2d 356, 361 (3d Cir.1986) (holding that a FELA plaintiff bears the

burden to establish the injury occurred during the relevant time period).

At the summary judgement stage, however, Defendant, as the moving party, must show the absence of a genuine issue of material fact as to whether Plaintiff knew or should have known of the existence and cause of the injury prior to January 27, 2003, or more than three years from the date Plaintiff filed suit. *See* Fed. R.Civ.P. 56(c). In response, the non-moving party bears the burden of pointing to facts of record that raise a genuine issue of material fact as to whether the injury and its cause were discoverable within the three years prior to January 27, 2006 (the date the suit was filed). *Id.*

### 1. *Plaintiff's Left Knee*

■ Defendant argues that the undisputed facts demonstrate, in accordance with Plaintiff's testimony and medical records, that Plaintiff's pain in his left knee began prior to January 27, 2003 and he was aware that knee problems could develop from his line of work. *See* Def.'s Mot. Summ. J.

#### a. *Actual Injury*

First, Plaintiff testified that he experienced pain in his left knee for nearly two years prior to his initial visit. *See* Def.'s Mot. Summ. J. Ex. B, McCain Dep. 42–43. Second, Plaintiff visited Dr. Ogucci and Dr. Herrington, who determined he was suffering from arthritis in his left knee prior to his first visit with Dr. O'Brien on January 30, 2003. *Id.* ¶¶ 11–12, 15; McCain Dep. 41:16–43:25.[4] Third, Dr.

---

**3.** The *Kubrick* court found that the plaintiff, by failing to determine the facts underlying the injury and its causation, did not act in a "reasonably diligent manner" and therefore, waived legal remedy. *See* 444 U.S. at 122, 100 S.Ct. 352 (finding that the plaintiff "need only have made inquiry among doctors with average training and expertise in such mat-

ters to have discovered that he probably had a good cause of action.").

**4.** In his deposition, Plaintiff testified as to the following:

Q: But you think that your doctor, whether or not it was Ogucci or Herrington, told you that you probably had an arthritic condition in your knee.

O'Brien testified that the onset of pain in Plaintiff's left knee was 2001. *Id.* ¶ 14; *see also* Def.'s Mot. Summ. J. Ex. C, O'Brien Medical Rec. (indicating Plaintiff's left knee pain extended for several years prior to the visit on January 30, 2003).[5] Therefore, Defendant has shown that there is no genuine issue of material fact that Plaintiff was aware of the injury to his left knee as early as 2001.

b. *Plaintiff's Awareness of Injury*

Defendant also argues that Plaintiff knew or should have known that the injury in his left knee was likely caused by his work history, and that he failed to timely investigate the nature and cause of injury. In support, Defendant avers that, as early as the 1990s, Plaintiff was aware that repetitive activity syndrome could occur from his line of work. *See* Def.'s Mot. Summ. J. 4 (arguing that where Plaintiff attended a screening for carpal tunnel syndrome, he became aware of repetitive activity syndrome and its effects on the body).

Specifically, Defendant argues that Plaintiff failed to do his duty to investigate the injury to his left knee and determine

its cause once he saw physicians in 2001. *See* McCain Dep. 44:9–24 ("Q: And at the time that either Dr. Ogucci or Dr. Herrington mentioned to you that you might have arthritis in your left knee, did they talk to you about what may have been causing or contributing to that? A: No. Q: Did you have any idea what might have been the source of the arthritic condition in your knee or the pain you were experiencing in your knee at that time? A: No. Q: Did you do any investigation to determine what might have been causing that? A: No. Q: Was there anything in your lifetime that you were doing other than working that could have been a cause or contributor to that problem? A: No."). Plaintiff clearly testified that no other work or activity could have contributed to the pain he experienced in his left knee.

Plaintiff saw Dr. Ogucci and Dr. Herrington sometime in 2001. At that time, Plaintiff knew that his left knee was experiencing severe pain, was informed by doctors that it might be arthritis, and though Plaintiff knew that the likely activity that could be causing the pain was his work, did nothing further to determine the source of his injury for the following two years.[6]

---

A: Yeah.
Q: Sometime maybe as early as 2001?
A: I'm not sure about a date on that....
Q: Well, no. I mean, if I have a record from Dr. O'Brien from 1 of '03, 1/30 of '03 that says you had knee pain that existed two years prior to that and it became progressively worse, I just do the math and minus two years is 1/30 of '01.
A: Okay....
Q: So I was just trying to figure out—it was definitely before 2003?
A: Okay....
Q: Do you disagree with it in any way?
A: No.
McCain Dep. 42:16–21; 43:5–10; 43:23–35.

**5.** Plaintiff also testified that:
Q: So you had a conversation about your knee pain with one of your doctors, and you think it may have been Dr. Ogucci prior to seeing Dr. O'Brien?

A: Dr. Ogucci put me on medication.
Q: What medication was that?
A: Celebrex.
Q: And what was that for?
A: The pain.
Q: And that was the pain in your knee?
A: And arm and—
Q: At that time—when did you first take that medication?
A: You know I'm not sure. I probably took that medication a couple of years.
Q: Sir, was it a couple years prior to seeing Dr. O'Brien?
A: Dr. O'Brien, yes.
*See* McCain Dep. 41:16–42:7.

**6.** *See* Pl.'s Opp'n Ex. 3 at 11–12, McCain Supp. Dep., dated 6/17/09 (Plaintiff stated that "sometime in 2003.... I went to Dr. O'Brien, and he did injections in that [left] knee and told, you know, that at that time

Further, Defendant points out that Plaintiff was aware another co-worker, Mr. Hall, who also worked as a machinist, was experiencing problems with his knees prior to the onset of his knee-related pain. *See* Def. Mot. Summ. J. 4 (citing McCain Dep. 25:3–5, 15–22).

Based on the testimony and medical records in the record, the Court finds that Plaintiff began experiencing pain in his left knee as early as 2001 and was aware or should have been aware that the pain to his left knee stemmed from his work activity.

Under these circumstances, Plaintiff's cause of action began to accrue starting in at least 2001, since the injury was discovered and the cause of the injury was discoverable (i.e., Plaintiff knew or should have known a cause of his injury) at that time. Pursuant to the three-year applicable statute of limitations, Plaintiff's cause of action as to his left knee expired in 2004. Plaintiff did not file this action until 2006. Therefore, Plaintiff's claims as to his left knee are time barred and Defendant's motion for summary judgment as to Plaintiff's left knee is granted.

### 2. *Plaintiff's Right Knee*

Here, unlike the argument concerning the left knee, Defendant points to no specific facts of record, than once Defendant was informed by Dr. O'Brien that he had bilateral repetitive activity syndrome in his left knee, he was on notice of the injury to his right knee. In opposition, Plaintiff explains that while his left knee experienced pain prior to January 30, 2003, his right knee did not have substantial pain until 2004.

### a. *Actual Injury*

Plaintiff testified that the pain only began in his right knee following his left knee replacement surgery in 2004. *See* McCain Dep. 49:24–50:12 ("Q: I'm sorry, Mr. McCain, I'm just trying to talk to you about what your current symptoms are in your knees right now . . . . A: I have just pain, sharp pain and swelling sometimes in my right knee. Q: And how long has that been going on? A: Severely like it is now, a year. Q: And how about when you first might have experience pain less severely? I don't know how else to—A: Are you talking about the right knee? Q: Yeah. A: It started right after I had my other knee replaced in 2004."); *but see id.* 51:3–16 ("Q: So in the early part of January of '03 or the early part of 2003, it is possible you might have been having pain in your knee? A: Uh-huh. Q: Your right knee? A: Yeah. I don't recall that but that's—Q: But you're not disputing it? A: No. No. I wouldn't dispute Dr. O'Brien. Q: Is it possible that you might have had pain in your right knee prior to going to see Dr. O'Brien? A: I don't recall that. I don't recall it. I mean, I don't recall telling him that, but—Q: So it's a possibility? A: But he x-rayed it, so I must have told him.").

Since Plaintiff testified that his right knee did not cause him pain prior to 2004, and Defendant has not pointed to any facts of record stating otherwise, Defendant has failed to show that no genuine issues of material fact exist as to whether Plaintiff knew or should have known of the injury to his right knee prior to January 27, 2003, or three years or more from the date he filed suit. *See* Def.'s Mot. Summ. J. Ex. C, O'Brien Medical Rec. (determining, after x-raying both knees, that Plaintiff was suffering from medial epicondylitis and degenerative joint disease in the left knee). Therefore, the Court need not address the second prong of the analysis,

was the arthritis. And he commented about walking on the ballast rock and everything.

Of course, he asked me where I worked; and he referenced that might be agitating it.").

whether Plaintiff knew or should have known the cause of the injury.

Under these circumstances, Defendant's motion for summary judgment as to Plaintiff's right knee will be denied.

### B. *Federal Preclusion* [7]

Here, the Court must determine whether Plaintiff's claims brought under FELA as to his right knee are, as Defendant argues, federally precluded pursuant to the Federal Railroad Safety Act ("FRSA"). Plaintiff avers that when working as a machinist for Defendant he was exposed to repetitive occupational trauma as a result of "repetitive bending, twisting, crawling, stooping, and walking on uneven or unlevel ballast." *See* Compl. ¶¶ 8–9.

Defendant argues that the Federal Railroad Safety Act ("FRSA") and the Federal Railroad Administration ("FRA") preclude Plaintiff's ballast claim as a matter of law. *See* Def.'s Mot. Summ. J. 24. Specifically, Defendant argues that, assuming the FRSA can preclude FELA claims, the FRSA ballast regulations cover Plaintiff's ballast claim with respect to "subject matter," thereby precluding Plaintiff's remaining claims.

In his deposition, Plaintiff testified that specified tracks existed alongside the trains for the employees' use when servicing the trains. *See* Def.'s Mot. Summ. J. Ex. B. 84–85. Plaintiff further testified that, in 2002, Defendant removed the ballast after many complaints from the employees and resurfaced the area with asphalt. *See* Pl.'s Opp'n Ex. 2 at 6:21–7:4 ("Q: Did you ever make any complaints about walking on ballast? A: Yes, in our safety meetings. Not only I brought that up but a lot of the other employees brought it up. We tried for years to get better walking conditions out in the test-outfield, yes; and they finally did asphalt that area."). Plaintiff stated that he felt as though the asphalt was an easier walking surface since it was level, as opposed to the ballast which was rocky. *See* Def.'s Mot. Summ. J. Ex. B. 84–85.

To determine whether Plaintiff's injury claims related to the subject matter of ballast size and condition are federally precluded, the Court must consider the relevant federal statutes. FELA provides railroad employees with a federal private cause of action for injuries based on the employer's negligence. *See* 45 U.S.C. § 51; *see also Norfolk S. Ry. Co. v. Sorrell,* 549 U.S. 158, 165–66, 127 S.Ct. 799, 166 L.Ed.2d 638 (2007) ("Absent express language to the contrary, the elements of a FELA claim are determined by reference to the common law.").[8]

On the other hand, the FRSA provides railroad safety regulations as pertaining to "railroad operations . . . and railroad-related accidents and incidents." 49 U.S.C. § 20101; *see also CSX Transp. v. Easterwood,* 507 U.S. 658, 113 S.Ct. 1732, 123 L.Ed.2d 387 (1993) (holding that FRSA preempts state law negligence claims and precludes federal injury claims based on

---

**7.** Concepts of preemption and preclusion, although intended to exclude similar kinds of claims, are analytically distinct. Preemption occurs when federal law displaces state law. Preclusion, on the other hand, is where one federal statute supersedes another statute. *Miller,* 159 Md.App. at 162–63, 858 A.2d 1025 ("The legal event triggered by a superseding [federal] statutory provision [in this case FRSA superseding FELA negligence

claims], however, is issue preclusion, not preemption.").

**8.** *See CSX Transp., Inc. v. Miller,* 159 Md.App. 123, 128–29, 858 A.2d 1025 (Md.Ct. Spec.App.2004) ("The FELA law is a hybrid. It hovers ambivalently between workers' compensation law and the common law tort of negligence. It is neither, but it partakes of characteristics of both.").

negligence under FELA); *Waymire v. Norfolk & W. Ry. Co.*, 218 F.3d 773 (7th Cir.2000) (finding that the FRSA preempts state law and precludes federal negligence claims brought under FELA).

The purpose of FRSA "is to promote safety in every area of railroad operations and reduce railroad-related accidents and incidents." 49 U.S.C. § 20101. The Secretary of Transportation is authorized thereunder to "prescribe regulations ... for every area of railroad safety ...." *Rooney v. City of Phila.*, 623 F.Supp.2d 644, 663 (E.D.Pa.2009) (citing 49 U.S.C. § 20103(a)).[9] However, the FRSA only explicitly preempts state laws, regulations and orders. It is silent as to whether "other federal safety standards" are precluded. *Nickels v. Grand Trunk W. R.R.*, 560 F.3d 426, 429 (6th Cir.2009) (currently on appeal to the Supreme Court).[10]

The Sixth Circuit recently held that a railroad employees negligence claims brought pursuant to FELA were "precluded by the FRSA if they would have been preempted if brought by a non-employee under state law." *See Nickels*, 560 F.3d at 430. There, the plaintiff brought an action against his employer for repetitive occupational trauma that caused injury to his knees based on oversized track ballast. *Id.* The Sixth Circuit analyzed whether the FRSA precludes a FELA claim if it would have preempted the same claim brought "as a state-law negligence action" and whether plaintiff's claims were of a subject matter preempted by FRSA. *Id.*

The *Nickels* court found that, in order to meet Congress' purpose of uniformity, the FRSA "can be achieved only if [federal rail safety regulations] are applied similarly to a FELA plaintiff's negligence claims and a non-railroad employee plaintiff's state law negligence claim." *Id.* (citing *Lane v. R.A. Sims, Jr., Inc.*, 241 F.3d 439, 443 (5th Cir.2001); *see also Waymire*, 218 F.3d at 776; *Dickerson v. Staten Trucking, Inc.*, 428 F.Supp.2d 909, 913–14 (E.D.Ark.2006); *Major v. CSX Transp., Inc.*, 278 F.Supp.2d 597 608–10 (D.Md.2003); *Miller*, 159 Md. App. at 123, 858 A.2d 1025). Further, the court found that where the FRSA regulated ballast tracking and preempted negligence claims based on the nature and size of ballast, the plaintiff's claims were precluded under FELA. *Nickels*, 560 F.3d at 430–31 (finding that FRSA's preemption provision covered state law negligence claims where "the Secretary has prescribed a regulation or issued an order

---

**9.** Though the FRSA was amended in 2007, under 49 U.S.C. 20106, those amendments only apply to "activities or events" (e.g., injuries) that occurred or were caused after January 18, 2002. *Kurns v. Chesterton*, 2009 WL 249769, *5, 2009 U.S. Dist. LEXIS 7757, *15–16 (Goldberg, J.) (E.D.Pa.2009). Here, since Plaintiff's remaining right knee claim began to run after 2002, the FRSA amendments apply.

**10.** However, § 20106 of the FRSA, entitled "Railroad Preemption Clarification," is an express preemption provision that does not preempt all state-based negligence actions:

(b) Clarification Regarding State Law Causes of Action—

(1) Nothing in this section shall be construed to preempt an action under state law

seeking damages for personal injury, death, or property damages alleging that a party—

(A) has failed to comply with the federal standard of care established by a regulation or order issued by the Secretary of Transportation ...;

(B) has failed to comply with its own plan, rule or standard that it created pursuant to a regulation or order issued by either of the Secretaries; or

(C) has failed to comply with a state law, regulation or order that is not incompatible with subsection (a)(2).

(2) This subsection shall apply to all pending state law causes of action arising from events or activities ....

49 U.S.C. § 20106.

'covering the subject matter of the State requirement'") (citing 49 U.S.C. § 20106).

The FRSA regulates ballast tracking and provides that:

> Unless it is otherwise structurally supported, all track shall be supported by material which will—
>
> (a) Transmit and distribute the load of the track and railroad rolling equipment to the subgrade; (b) Restrain the track laterally, longitudinally, and vertically under dynamic loads imposed by railroad rolling equipment and thermal stress exerted by the rails; and (c) Provide adequate drainage for the track;

and (d) Maintain proper track crosslevel, surface, and alinement.

49 C.F.R. § 213.103. The *Nickels* court explicitly found that "the regulation substantially subsumes the issue of ballast size." 560 F.3d at 430.

Here, Plaintiff avers that injury to his knees arose from "squatting and bending, getting in awkward positions to work and walking on ballast rock, climbing up and down locomotives." *See* McCain Dep. 14:23–24.[11] During his time working for Defendant, Plaintiff was a machinist who worked primarily in three areas: in a brake shoe job,[12] lead worker on the test-out field,[13] oil and water job[14] and hostler-

---

**11.** *See also* McCain Dep. 14:19–15:3 ("Q: Can you tell me what it is about your job or your job duties that you think caused or contributed to the development of the problems in your knees? A: Well, it would probably be a number of things. The squatting and bending, getting in awkward positions to work and walking on ballast rock, climbing up and down locomotives. And climbing on a locomotive is much different than climbing stairs. It is almost a direct straight up and straight down climb. Just daily things we had to do that would attribute to that.").

**12.** In his deposition, Plaintiff explained that the brake shoe job was like a service pit for the locomotives, during which he would have to walk back and forth along a table to inspect the underbelly of the locomotive (e.g., axles, brake shoes) resting on the track. *See* McCain Dep. 72–78 ("Q: So it wasn't—that job didn't necessarily involve a lot of repetitive bending up and down, right, or squatting up and down? A: I would say it did involve some, yes."). Plaintiff worked on the brake shoe job for "three, four years" during his employment with Defendant which spanned from 1986 through 2004. *Id.* at 21:17–19 (noting that Plaintiff spent eighty percent of his time on the brake shoe job inside the shop that was paved and twenty percent of his time moving locomotives that required walking on ballast). During his time working on the brake shoe job, Plaintiff was often in the "ready field," where the locomotives that had been serviced would be put, which had ballast rock until it was paved with asphalt sometime

around 1999. *Id.* at 84:15–25; 85:16–24 ("Q: Before they paved it, what kind of rock was there? Was there walking stone there? A: No, there wasn't. Q: What kind of rock was it? A: Ballast rock. Q: How big was the rock? A: Some of it probably as big as this can. Q: As a soda can? A: Yeah, and some smaller."). Plaintiff also testified that ballast tracks had to be walked across in order to get the walking path provided to employees was likely a dirt path, not ballast rock. *Id.* at 88.

**13.** Plaintiff stated that he worked in the test-out position for roughly eight or nine years, which was located in the service center, but involved a significant amount of walking (also on ballast rock) and climbing. *See* McCain Dep. 15:24–17:10; 95:16–18; 99:21–100:1 ("A: If you have five or six locomotives and you got to dig them all out of here, it takes time and a lot of climbing, getting up and down on different locomotives. Get them back in the hole, get off these, walk over here (indicating) and get on this one, climb up on this one, and move it to wherever you need it."). In this position, Plaintiff would build between ten and twelve trains in an eight-hour shift. *See* McCain Dep. 101.

**14.** Plaintiff testified that he worked on the oil and water job for a short period of time, however it involved "a significant amount of bending and stooping" with a "heavy hose" full of oil. *See* McCain Dep. 96:11–13, 13–15 (noting that this job was completed inside the facility where there was no ballast rock).

504

type duties. *See id.* 68:1–5 (noting that a hostler was required to move a locomotive, which required repetitive climbing up and down ladders).

*Nickels* is distinguishable. In *Nickels,* the Court found that the FRSA regulated ballast size in regards to its placement on the train tracks. 560 F.3d at 430–31. Since the ballast was used to stabilize the train tracks, it was regulated under FRSA § 213.103. *Id.* By contrast here, Plaintiff does not alone contend that the ballast was the sole cause of his injuries. Specifically, Plaintiff stated that his injuries were likely also caused by repetitive squatting and bending and climbing up and down locomotive ladders. In fact, Plaintiff argues that, though the ballast rock contributed to his injuries, his time on the trackside walkways contributed to his injured knees. *See id.,* at 433–34 (Rogers, J., dissenting) ("Nothing in 49 C.F.R. § 213.103 or any related regulations addresses the issue of trackside walkways and ballast size. The regulations require adequate support for the trains, and advert in no way to the nature of a walking surface.").[15]

Under these circumstances, the Court finds that while Plaintiff's claims based on the nature and size of the track ballast are precluded, *see Nickels,* his claims based on repetitive "squatting, bending and climbing up and down locomotive" ladders are not, under the applicable FRSA regulation, § 213.103.[16] Therefore, Plaintiff's FELA negligence claims are not precluded by FRSA regulations and De-

fendant's motion for summary judgment as to Plaintiff's right knee claims is granted in part and denied in part.

## V. CONCLUSION

For the reasons set for above, Defendant's motion for summary judgment will be granted in part and denied in part.

## ORDER

**AND NOW,** this **23rd** day of **April 2010,** after consideration of Defendant's motion for summary judgment (doc. no. 24), it is hereby **ORDERED** as follows:

As to claims concerning Plaintiff's left knee, Defendant's motion for summary judgment is **GRANTED;**

As to claims concerning Plaintiff's right knee, Defendant's motion for summary judgment is **GRANTED** in part and **DENIED** in part. It is granted for claims based on the nature and size of the ballast, as precluded under *Nickels v. Grand Trunk W. R.R.,* 560 F.3d 426 (6th Cir. 2009), and it is denied for claims based on Plaintiff's "squatting, bending and climbing up and down locomotive ladders."

**AND IT IS SO ORDERED.**

15. The only FRSA provision regulating walkways is § 213.37(c), which provides that vegetation must be controlled so as not to interfere with "employees' trackside duties." *Id.* at 434 (Rogers, J., dissenting); *but see Mo. Pac. R.R. Co. v. R.R. Comm'n of Tx.,* 833 F.2d 570, 574 (5th Cir.1987) (finding that FELA relief would be precluded if a "walkway requirement or other safety regulation that hindered or prevented a railroad from complying

simultaneously with an FRA regulation designed to enhance safety in a different area").

16. Plaintiff has also asserted that other theories of liability exist (i.e., Defendant failed to adequately warn the employees regarding work-related dangers, failed to provide an ergonomic safety program, and failed to provide adequate walking surfaces). *See* Pl.'s Opp'n *22.