IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
November 14, 2024 Session

## TROY L. ROUZER v. CSX TRANSPORTATION, INC.

**Appeal from the Circuit Court for Hamilton County**
**No. 18C330      L. Marie Williams, Judge**

_____

## No. E2023-01271-COA-R3-CV

_____

This appeal concerns whether a railroad employee's negligence claim brought under the Federal Employers Liability Act, 45 U.S.C. § 51, *et seq.* ("FELA") is precluded by the Federal Railroad Safety Act, 49 U.S.C. § 20101, *et seq.* ("FRSA").  Troy L. Rouzer ("Plaintiff"), a locomotive engineer, sued CSX Transportation, Inc. ("Defendant") in the Circuit Court for Hamilton County ("the Trial Court") under FELA for injuries he sustained in a collision.  Plaintiff alleged insufficient training.  Defendant filed a motion for summary judgment, arguing that FRSA precludes Plaintiff's FELA claim.  Defendant argued that national uniformity in safety rules requires this result.  The Trial Court granted Defendant's motion.  Plaintiff appeals.  We hold, *inter alia*, that in view of the United States Supreme Court's holding in *POM Wonderful LLC v. Coca-Cola Co.*, 573 U.S. 102, 134 S.Ct. 2228, 189 L.Ed.2d 141 (2014), exemplified in its statement that "[w]hen two statutes complement each other, it would show disregard for the congressional design to hold that Congress nonetheless intended one federal statute to preclude the operation of the other[,]" *id*. at 115, Plaintiff's FELA claim is not precluded by FRSA as both federal statutes complement one another toward the goal of rail safety.  We, therefore, reverse the Trial Court's grant of summary judgment to Defendant and remand for further proceedings consistent with this Opinion.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Reversed;**
**Case Remanded**

D. MICHAEL SWINEY, C.J., delivered the opinion of the court, in which THOMAS R. FRIERSON, II, and KRISTI M. DAVIS, JJ., joined.

William G. Colvin, Chattanooga, Tennessee; and William C. Tucker, Jr., and Paisley Newsome, Birmingham, Alabama, admitted *pro hac vice*, for the appellant, Troy L. Rouzer.

John W. Baker, Jr., and Emily L. Herman-Thompson, Knoxville, Tennessee, for the appellee, CSX Transportation, Inc.

## OPINION

## Background

On July 22, 2015, Plaintiff was working aboard a train as a locomotive engineer for Defendant. Jeremy Worsham ("Worsham") was the train's conductor. At the time of the incident, Plaintiff was on the right side of the cab in the engineer's seat, while Worsham was on the left. Plaintiff watched the rear of the train as it went around a right curve. Worsham yelled "truck, shoot them!" This meant for Plaintiff to activate the emergency brake. An object had been sighted on the tracks. Plaintiff blew the horn and put the automatic brake on emergency. Plaintiff then got on his knees. He bailed the independent locomotive brake with his left hand, and with his right hand blew the horn up through impact. The train nevertheless hit an abandoned box truck sitting on the tracks.

In March 2018, Plaintiff sued Defendant pursuant to FELA in the Trial Court. Plaintiff alleged that, as a result of the collision, he "suffered severe and permanent injuries to his body, including but not limited to, his neck, back, spine, body and the bones, vertebrae, disks, ligaments, tendons, vessels, nerves, and other tissues thereof, that were wrenched, sprained, herniated and otherwise injured and damaged." Plaintiff alleged further that "Defendant failed to provide reasonably safe training and methods for work and Defendant knew, or in the exercise of ordinary care, should have known of such conditions and that such conditions were reasonably likely to cause substantial harm." Specifically, it is Plaintiff's position that Defendant was negligent by failing to train him adequately on how to respond to a collision scenario.

In May 2021, Defendant filed a motion for summary judgment. Defendant argued that FRSA, which was enacted in 1970 to promote rail safety, precludes Plaintiff's claim under FELA, which was enacted in 1908 and provides an avenue for railroad workers to seek redress for on-the-job injuries. Defendant argued:

> Put simply, if there are FRA [Federal Railroad Administration] regulations for crew qualification and training, and CSX has complied, as here, plaintiff's FELA common law negligence claims are barred as precluded. The FRA regulations promulgated under the FRSA do more than establish a floor. They set a standard of care with which any other standard (set by a jury under the FELA) would be in conflict. The language of the preemption provision of the FRSA recognizes the need for this kind of broad

displacement: it says that state laws are preempted if there is a federal regulation covering the subject matter. The FRA itself has already spoken to this point, for example, explaining that lower speed limits can be detrimental because shifts in train speed create a risk of derailment. *See* Track Safety Standards, 63 Fed. Reg. 33991, 39999 (June 22, 1998) ("Each time a train must slow down and then speed up, safety hazards, such as buff and draft forces, are introduced."). As the courts have explained, the FRSA regulations and objectives of uniformity would be rendered "virtually meaningless" by allowing juries in FELA actions to substitute their views for the FRA's expertise and subject the railroads to conflicting standards.

In June 2022, Plaintiff filed a response to Defendant's motion for summary judgment. In his response, Plaintiff stated, in part:

> Plaintiff's biomechanical engineer and accident reconstructionist, Dr. Tyler A. Kress has testified that the railroad should train their employees what to do in the obviously foreseeable event of an impending collision such as this. Dr. Kress reviewed the CSX Transportation Air Brake Train Handling and Equipment Handling Rule Book as well interviewed two other CSX engineers, and confirmed that Rouzer was operating the brake system at the time of impact consistent with the way that he had been trained to do with CSX. (Kress Affidavit, ¶ 31). Dr. Kress will testify that the position in which Rouzer had to place himself, because of his compliance with CSX rules and his training, put Rouzer at a much greater risk of injury than if he had been trained to mitigate the risk.

> ***

> Further, it was Worsham's responsibility to keep a lookout ahead of the train. Rouzer had the responsibility, because of the right-hand curve, to look back and inspect his train out of this curve. This duty is well known among train crews and the conductor had the responsibility to keep the lookout ahead. Worsham should have put the train in emergency much sooner and, if he had done so, the collision would have been avoided, or the impact significantly lessened. Worsham's failure to properly keep a lookout also violated CSX's duty to provide Rouzer with a reasonably safe place to work under the circumstances and resulted, in whole or in part, in his injuries.

> ***

> Even assuming his effort to bail the brake was not futile, when it became clear that the truck was not going to move, and the collision was

inevitable, Mr. Rouzer should have been allowed to abandon the independent brake and horn and get in a position to brace for impact that would reduce his risk of injury from the impact and secondary impacts. Plaintiff's experts both agree that proper training on body position would have mitigated the risks to Rouzer in this collision.

With respect to Defendant's preclusion argument, Plaintiff contended that FRSA supplements rather than supplants FELA.

In April 2023, the Trial Court heard Defendant's motion for summary judgment. In August 2023, the Trial Court entered an order granting summary judgment in favor of Defendant. In its order, the Trial Court stated, in part:

> Plaintiff claims the Defendant was negligent in failing to train its employees on proper safety and braking procedures at imminent grade crossing collisions. The Defendant claims there is no evidence of negligence on the part of the Defendant and Plaintiff's federal common law claims under FELA related to such training are precluded by the FRSA and the FRA's regulatory framework for qualification and training locomotive crews. The preclusion argument is dispositive of the entire case. Therefore, it is not necessary to address other bases on which the motion for summary judgment is filed. The Plaintiff identifies no contested material facts relevant to the preclusion argument.
> As an additional theory, the Defendant contends that the sole cause of the accident was the abandoned truck on the crossing and no trier of fact could find otherwise. Plaintiff contends that it is undisputed the truck on the tracks caused the accident but argues a reasonable jury could find that the Defendant's training procedures caused Plaintiff's injuries. It is not necessary to address this issue.
> FELA provides in pertinent part: Every common carrier by railroad while engaging in commerce . . . shall be liable in damages to any person suffering injury while he is employed by such carrier in such commerce . . . for such injury or death resulting in whole or in part from the negligence of any of the officers, agents, or employees of such carrier, or by reason of any defect or insufficiency, due to its negligence, in its cars, engines, appliances, machinery, track, roadbed, works, boats, wharves, or other equipment. *45 U.S.C. § 51*.
> To establish a prima facie case under FELA, Plaintiff must present "more than a scintilla of evidence" to prove that some act or omission on the part of the railroad employer constituted negligence. *Aparicio v. Norfolk & W. Ry.*, 84 F.3d 803, 805 (6th Cir. 1996). Plaintiff must "prove the traditional

common law elements of negligence: duty, breach, foreseeability, and causation." *Van Gorder v. Grand Trunk W. R.R.*, 509 F.3d 265, 269 (6th Cir. 2007).

The issue before the Court is whether the negligence claim under FELA is precluded by the Federal Rail Safety Act and FRA regulation. The FRSA's purpose is "to promote safety in every area of railroad operations and reduce railroad-related accidents and incidents." *49 U.S.C. § 20101*. Under the FRSA's express preemption provision, "[l]aws, regulations, and orders related to railroad safety . . . shall be nationally uniform to the extent practicable." *49 U.S.C. § 20106(a)(1)*. A state-law negligence action is "covered" and therefore preempted if a FRSA regulation "substantially subsume[s]" the subject matter of the suit. *Nickels v. Grand Trunk W. R.R.*, 560 F.3d 426, 429 (6th Cir. 2009).

Plaintiff argues neither FRSA nor FRA precludes negligence claims under FELA. For support, Plaintiff relies on *POM Wonderful LLC v. Coca-Cola Co.*, 573 U.S. 102, 134 S. Ct. 2228 (2014). *POM Wonderful* involved claims of false advertising against Coca-Cola under the Lanham Act 15 U.S.C. § 1125(a). Coca Cola argued that the Lanham Act claim was precluded by a regulation promulgated by the FDA pursuant to the Federal Food, Drug, and Cosmetic Act, 21 U.S.C. § 301, prohibiting the misbranding of food and drink. The Court held that "when two statutes complement each other, it would show disregard for the congressional design to hold that Congress nonetheless intended one federal statute to preclude the operation of the other." *POM Wonderful LLC v. Coca-Cola Co.*, 573 U.S. 115 S. Ct. 2228 (2014). Plaintiff claims the test set in *POM Wonderful* applies to this current matter. However, the sixth circuit has not adopted this test in regards to FELA claims since the statutes are different. In a case involving a preclusion of training claim, *Norfolk S. Ry. v. Tobergte*, the Court held: "No matter how persuasive the Court may find the reasoning in *POM Wonderful* as applied to this instant case, the Court is hesitant to overturn established and binding Sixth Circuit precedent, absent further guidance from the Sixth Circuit. . . .this is particularly the case here where *Nickels* involves different statutes than those at issue in *POM Wonderful*. . .Accordingly, the Court finds that *Nickels* still governs the relationship between the FRSA and the FELA—the FRSA precludes a FELA claim when an FRA regulation covers the subject matter of the claim, and the railroad has complied with that regulation." No. 5:18-207-KKC, 2021 U.S. Dist. LEXIS 21391, at *25-26 (E.D. Ky. Feb. 4, 2021).

When analyzing both parties' cases used to support or refute the issue of preclusion, Plaintiff does not rely on cases supported by the 6th Circuit and focuses their argument on cases that agree with the analysis set in *POM*

*Wonderful*. The Defendant does rely on the 6th Circuit for support which refutes the analysis established in *POM Wonderful*. Plaintiff relies on *Zeagler*, a GA Supreme Court case that disagrees with 6th Circuit cases on the issue of whether railroads have a duty of care when it comes to safety training. *Norfolk S. Ry. v. Zeagler*, 293 Ga. 582, 748 S.E.2d 846 (2013). However, the Plaintiff did not provide any binding 6th Circuit cases that agree with the GA Supreme Court's analysis. Plaintiff also relies on *Murray v. S.C. Cent. R.R. Co., LLC*, a 4th Circuit case that states FRSA only has a state law preemption but not a federal preclusion section and the Court believes Congress did not intend to preclude claims under FELA based on differing standards. Civil Action No. 4:16-03841-AMQ, 2018 U.S. Dist. LEXIS 132268 (D.S.C. Aug. 7, 2018). In addition to *Murray*, Plaintiff cites, *Madden v. Antonov*, an 8th Circuit case that declined to follow the 6th Circuit's dismissal of the analysis set in *POM Wonderful*. 156 F. Supp. 3d 1011 (D. Neb. 2015).

The 6th Circuit is consistent in its analysis on the issue of preclusion. In *Parker v. CSX Transp. INC.*, the Court addressed specifically the failure to train claim and held that "[t]he preemption issue is not whether federal law addresses how and when a train approaching an object on the tracks must apply the brakes and sound the horn. The real question is whether federal law on railroad training "substantially subsume[s]" the subject matter of the relevant state law. . .[t]he Court concludes that the federal regulations on railroad training "substantially subsume" Tennessee law on a railroad's duty to train its personnel. The regulations further require railroads to submit their training program to the Federal Railroad Administration for approval. In light of the foregoing, the federal regulations governing railroad training "substantially subsume" the Tennessee common law on railroad training." No. 17-2262-STA-egb, 2017 U.S. Dist. LEXIS 190257, at *15 (W.D. Tenn. Nov. 17, 2017). The Defendant cited five additional cases from the 6th Circuit that specifically address the decision from *POM Wonderful*, which all four cases disagree with the analysis. (*Norfolk S. Ry. Co. v. Tobergte*, No. 5:18-207-KKC, 2021 U.S. Dist. LEXIS 21391 (E.D. Ky. Feb. 4, 2021); *CSX Transp., Inc. v. City of Sebree*, 924 F.3d 276 (6th Cir. 2019); *Wheeler v. CSX Transp., Inc.*, No. 3:14 CV 2689, 2017 U.S. Dist. LEXIS 114059 (N.D. Ohio July 21, 2017); *Bahus v. Union Pac. R.R. Co.*, 2019 IL App (1st) 180722, 433 Ill. Dec. 382, 131 N.E.3d 1227; *Schendel v. Duluth Missabe & Iron Range Ry. Co.*, 2014 Minn. Dist. LEXIS 8).

This Court is not bound by 6th Circuit decisions as they are "merely persuasive". *Clark v. Gwyn*, No. M2018-00655-COA-R3-CV, 2019 Tenn. App. LEXIS 176, at *19 (Ct. App. Apr. 11, 2019). However, this Court finds the 6th Circuit cases to be more authoritative than the other cases cited by

the Plaintiff. Plaintiff cases rely on a Supreme Court decision related to a different Federal statute and does not provide any persuasive cases that negate the 6th Circuit consistency on the issue of preclusion. Because the Plaintiff has failed to establish a genuine issue of material fact regarding whether a negligence claim under FELA is precluded by the FRSA and FRA statutory guidelines their claim must be dismissed as a matter of law.

Plaintiff timely appealed to this Court.

## Discussion

Although not stated exactly as such, Plaintiff raises the following issues on appeal: 1) whether the Trial Court erred in holding that Plaintiff's FELA claim is precluded by FRSA; and 2) whether the Trial Court erred in dismissing Plaintiff's claim rooted in Worsham's alleged negligence.

Regarding the standard of review for cases disposed of by summary judgment, the Tennessee Supreme Court has instructed:

> Summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Tenn. R. Civ. P. 56.04. We review a trial court's ruling on a motion for summary judgment de novo, without a presumption of correctness. *Bain v. Wells*, 936 S.W.2d 618, 622 (Tenn. 1997); *see also Abshure v. Methodist Healthcare–Memphis Hosp.*, 325 S.W.3d 98, 103 (Tenn. 2010). In doing so, we make a fresh determination of whether the requirements of Rule 56 of the Tennessee Rules of Civil Procedure have been satisfied. *Estate of Brown*, 402 S.W.3d 193, 198 (Tenn. 2013) (citing *Hughes v. New Life Dev. Corp.*, 387 S.W.3d 453, 471 (Tenn. 2012)).

> \*\*\*

> [I]n Tennessee, as in the federal system, when the moving party does not bear the burden of proof at trial, the moving party may satisfy its burden of production either (1) by affirmatively negating an essential element of the nonmoving party's claim or (2) by demonstrating that the nonmoving party's evidence *at the summary judgment stage* is insufficient to establish the nonmoving party's claim or defense. We reiterate that a moving party seeking summary judgment by attacking the nonmoving party's evidence

-7-

must do more than make a conclusory assertion that summary judgment is appropriate on this basis. Rather, Tennessee Rule 56.03 requires the moving party to support its motion with "a separate concise statement of material facts as to which the moving party contends there is no genuine issue for trial." Tenn. R. Civ. P. 56.03. "Each fact is to be set forth in a separate, numbered paragraph and supported by a specific citation to the record." *Id.* When such a motion is made, any party opposing summary judgment must file a response to each fact set forth by the movant in the manner provided in Tennessee Rule 56.03. "[W]hen a motion for summary judgment is made [and] . . . supported as provided in [Tennessee Rule 56]," to survive summary judgment, the nonmoving party "may not rest upon the mere allegations or denials of [its] pleading," but must respond, and by affidavits or one of the other means provided in Tennessee Rule 56, "set forth specific facts" *at the summary judgment stage* "showing that there is a genuine issue for trial." Tenn. R. Civ. P. 56.06. The nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co.* [*v. Zenith Radio Corp.*], 475 U.S. [574,] 586, 106 S.Ct. 1348 [89 L.Ed.2d 538 (1986)]. The nonmoving party must demonstrate the existence of specific facts in the record which could lead a rational trier of fact to find in favor of the nonmoving party. If a summary judgment motion is filed before adequate time for discovery has been provided, the nonmoving party may seek a continuance to engage in additional discovery as provided in Tennessee Rule 56.07. However, after adequate time for discovery has been provided, summary judgment should be granted if the nonmoving party's evidence *at the summary judgment stage* is insufficient to establish the existence of a genuine issue of material fact for trial. Tenn. R. Civ. P. 56.04, 56.06. The focus is on the evidence the nonmoving party comes forward with at the summary judgment stage, not on hypothetical evidence that theoretically could be adduced, despite the passage of discovery deadlines, at a future trial.

*Rye v. Women's Care Cntr. of Memphis, MPLLC,* 477 S.W.3d 235, 250, 264-65 (Tenn. 2015).

We first address whether the Trial Court erred in holding that Plaintiff's FELA claim is precluded by FRSA. Plaintiff argues that FRSA supplements and is complementary to FELA—therefore, the former statute does not preclude the latter. Defendant argues in response that declining to find preclusion would "upset the apple cart" and pose a risk to national uniformity in rail safety rules. Both sides contend with the *POM Wonderful* case by the United States Supreme Court, which addresses preclusion and federal statutory conflict. Plaintiff contends that the reasoning of *POM Wonderful*, whereby no preclusion

was found between the two federal statutes at issue there, extends to the appeal at bar.  In his reply brief, Plaintiff states further that "[b]ecause the FELA is the exclusive remedy by which a railroad employee may recover against his employer for on-the-job injuries, if a railroad worker's injury claims are deemed to be precluded by the FRSA, such worker has no recourse for the injuries he or she received as a result of the railroad's negligence."  Defendant argues in turn that *POM Wonderful* has no application to the specific statutes at issue here.

In *POM Wonderful*, the POM Wonderful company sued Coca-Cola under the Lanham Act for misleading labeling.  573 U.S. at 106.  The Court of Appeals for the Ninth Circuit held that POM Wonderful's claim under the Lanham Act was precluded by the Federal Food, Drug, and Cosmetic Act.  *Id*.  On appeal to the United States Supreme Court, the nation's highest court disagreed with the Ninth Circuit's reasoning.  *Id*.  The court observed that "[n]othing in the text, history, or structure of the FDCA or the Lanham Act shows the congressional purpose or design to forbid these suits."  *Id*.  The court stated further that "neither the Lanham Act nor the FDCA, in express terms, forbids or limits Lanham Act claims challenging labels that are regulated by the FDCA."  *Id*. at 113.  Continuing its discussion, the court stated that "[w]hen two statutes complement each other, it would show disregard for the congressional design to hold that Congress nonetheless intended one federal statute to preclude the operation of the other."  *Id*. at 115.  Considering the distinct though complementary purposes of the laws, the court noted that "[a]lthough both statutes touch on food and beverage labeling, the Lanham Act protects commercial interests against unfair competition, while the FDCA protects public health and safety."  *Id*.  Regarding Coca-Cola's argument that preclusion was necessary to ensure national uniformity, the court stated:

> [I]t is far from clear that Coca-Cola's assertions about national uniformity in fact reflect the congressional design.  Although the application of a federal statute such as the Lanham Act by judges and juries in courts throughout the country may give rise to some variation in outcome, this is the means Congress chose to enforce a national policy to ensure fair competition.  It is quite different from the disuniformity that would arise from the multitude of state laws, state regulations, state administrative agency rulings, and state-court decisions that are partially forbidden by the FDCA's pre-emption provision.  Congress not infrequently permits a certain amount of variability by authorizing a federal cause of action even in areas of law where national uniformity is important.

*POM Wonderful*, 573 U.S. at 117.  Thus, the Supreme Court reversed the Court of Appeals for the Ninth Circuit.  *Id*. at 121.

In the present matter, the statutes subject to the preclusion analysis are different from those of *POM Wonderful*. One is FELA, which was enacted in 1908 to allow injured railroad employees to bring claims for on-the-job injuries. The U.S. Supreme Court has summarized FELA succinctly: "FELA's language is straightforward: Railroads are made answerable in damages for an employee's 'injury or death resulting in whole or in part from [carrier] negligence.' 45 U.S.C. § 51." *CSX Transp., Inc. v. McBride*, 564 U.S. 685, 703, 131 S.Ct. 2630, 180 L.Ed.2d 637 (2011). The other statute at issue, which Defendant argues precludes Plaintiff's FELA claim, is FRSA. Enacted in 1970, FRSA promotes railroad safety. Under the authority of FRSA, the Federal Railroad Administration ("FRA") prescribes regulations for railroad safety. In one seminal pre-*POM Wonderful* case from the Sixth Circuit Court of Appeals, FRSA was described as follows:

> The FRSA's purpose is "to promote safety in every area of railroad operations and reduce railroad-related accidents and incidents." *Norfolk S. Ry. Co. v. Shanklin*, 529 U.S. 344, 347, 120 S.Ct. 1467, 146 L.Ed.2d 374 (2000) (quoting 49 U.S.C. § 20101). The FRSA authorizes the Secretary of Transportation ("Secretary") to "prescribe regulations and issue orders for every area of railroad safety." *Id.* (quoting 49 U.S.C. § 20103(a)). Under the FRSA's express preemption provision, "[l]aws, regulations, and orders related to railroad safety . . . shall be nationally uniform to the extent practicable." 49 U.S.C. § 20106(a)(1). "A State may adopt or continue in force a law, regulation, or order related to railroad safety . . . until the Secretary of Transportation . . . prescribes a regulation or issues an order covering the subject matter of the State requirement." 49 U.S.C. § 20106(a)(2). A state-law negligence action is "covered" and therefore preempted if a FRSA regulation "substantially subsume[s]" the subject matter of the suit. *CSX Transp., Inc. v. Easterwood*, 507 U.S. 658, 664, 113 S.Ct. 1732, 123 L.Ed.2d 387 (1993). This provision explicitly preempts only State laws, regulations, and orders; it does not mention other federal safety standards.

*Nickels v. Grand Truck Western R.R., Inc.*, 560 F.3d 426, 429 (6th Cir. 2009).

In *Nickels*, rail workers sued for injuries sustained from years of walking on oversized ballast. *Id.* at 428. The *Nickels* court considered: "(1) whether a FELA claim is precluded if the same claim would be preempted by the FRSA if brought as a state-law negligence action; and (2) if so, whether the subject of these plaintiffs' claims has been covered by a FRSA regulation. We answer both questions in the affirmative." *Id.* at 429-30. The court stated that "any exposure to conflicting standards undermines uniformity," and that "[t]he plaintiffs' claims are precluded by the FRSA if they would have been preempted if brought by a non-employee under state law." *Id.* at 430. The *Nickels* court

concluded: "Because 49 C.F.R. § 213.103 covers the issue of ballast size and precludes the plaintiffs' FELA claims, we **AFFIRM** the grants of summary judgment to the railroads." *Id*. at 433.[1]

In a pre-*POM Wonderful* opinion by this Court concerning FELA/FRSA preclusion, we stated that "[d]espite Appellant's argument that the reasoning in *Nickels* is flawed, it is beyond dispute that Tennessee has adopted the *Nickels* analysis in cases involving the defense of preclusion or preemption of claims brought by FELA plaintiffs." *Ward v. Illinois Cent. R. Co.*, No. W2012-01839-COA-R3-CV, 2013 WL 3128974, at *9 (Tenn. Ct. App. June 20, 2013), *perm. app. denied Nov. 14, 2013*. Several other jurisdictions have continued to be guided by *Nickels*. In 2021, the U.S. District Court for the Eastern District of Kentucky stated that "the Court finds that *Nickels* still governs the relationship between the FRSA and the FELA—the FRSA precludes a FELA claim when an FRA regulation covers the subject matter of the claim, and the railroad has complied with that regulation." *Norfolk So. Ry. Co. v. Tobergte*, No. 5:18-207-KKC, 2021 WL 400476, at *8 (E.D. Ky. Feb. 4, 2021). The court stated further: "No matter how persuasive the Court may find the reasoning in *POM Wonderful* as applied to this instant case, the Court is hesitant to overturn established and binding Sixth Circuit precedent, absent further guidance from the Sixth Circuit." *Id*. In addition, Defendant has filed supplemental authority with this Court, *Van Buren v. Kansas City Southern Ry. Co.*, No. 55,928-CA, --- So.3d ----, 2024 WL 4830496 (La. App. 2 Cir. Nov. 20, 2024), a Louisiana case which affirmed dismissal of FELA claims as precluded by FRSA and observed that "earlier jurisprudence almost unanimously found preclusion. *POM Wonderful* arose in a context totally removed from the safety concerns of FRSA, and the cases since then have been divided whether to keep or jettison the preclusion." *Id*. at *4.

However, a growing number of jurisdictions have taken a different view. In these jurisdictions, *POM Wonderful* has led to a shift away from *Nickels* and progeny. For instance, in one case, the U.S. District Court for the Western District of Missouri declined to find that a FELA claim was precluded by FRSA, discussing as follows:

> The parties here dispute the significance and result of applying the
> *POM Wonderful* framework to the FRSA's preclusive effect or lack thereof

---

[1] We note the dissent in *Nickels* by Judge John Rogers, stating in part that "[t]he Supreme Court's analysis in *CSX Transportation, Inc. v. Easterwood*, 507 U.S. 658, 113 S.Ct. 1732, 123 L.Ed.2d 387 (1993), the seminal FRSA preemption case, strongly suggests that the FRSA regulation in this case does not preclude an FELA action." *Nickels*, 560 F.3d at 433. "In that case the Supreme Court held that a state tort action for wrongful death, to the extent that it was based on a train's traveling at excessive speed, was preempted by FRSA train-speed regulations." *Id*. at 434. Judge Rogers stated that "[u]nlike the regulation at issue in *Easterwood*, the FRSA regulation is a floor that guarantees a minimum level of safety and there are many ways that the railroad can meet the standard." *Id*. at 435.

over FELA. Webb correctly notes that by the FRSA's plain terms, the FRSA's preemption provision only applies to state laws, rather than federal laws. 49 U.S.C. § 20106(a)(2). However, the lack of express preemption language in the FRSA, while relevant, is likely not definitive. *See Jones v. BNSF Ry. Co.*, 306 F. Supp.3d 1060, 1067 (C.D. Ill. 2017); *Henderson v. Amtrak*, 87 F.Supp.3d 610, 616-618 (S.D.N.Y. 2015); *Norfolk S. Ry. Co. v. Hartry*, 307 Ga. 566, 837 S.E.2d 303, 307-308 (Ga. 2019).

The crux of the arguments by both UPRR and Webb revolve around whether or not the *Waymire* [*v. Norfolk and Western Ry. Co.*, 218 F.3d 773 (7th Cir. 2000)] line of reasoning—finding that FELA must be precluded by the FRSA to effectuate the uniformity of railroad safety regulation—should be reconsidered in light of *POM Wonderful* and more recent cases. UPRR contends that decisions against the FRSA's preclusive effect either ignore or downplay a clear FRSA mandate to create a national, uniform set of laws and regulations governing rail safety, and that the FRSA expressly supplements FELA. Furthermore, UPRR argues that allowing a FELA claim to go forward with a standard of care higher than an FRSA regulation would eviscerate the statutory scheme, undermining the FRA's judgment on railroad safety issues on a case-by-case basis.

This Court is unpersuaded by this argument, because the FRSA and FELA act complementary to one another, rather than in opposition. The FRSA seeks to enhance safety in "every area of railroad operations," and protects the public as well as railroad workers. *Madden* [*v. Anton Antonov & AV Transp., Inc.*], 156 F. Supp.3d [1011,] 1021 [(D. Neb. 2015)]; 49 U.S.C. § 20101. The FRSA gives the Secretary of Transportation the authority to "prescribe regulations and issue orders for every area of railroad safety," through national, comprehensive regulatory standards. *Jones*, 306 F. Supp.3d at 1069 (quoting 49 U.S.C. § 20103(a)). FELA, on the other hand, deals solely with the safety of railroad workers and provides a private cause of action through the common law of negligence. *Id.* The court in *Madden* found that:

> FRSA was not created to provide uniformity for the sake of uniformity. The statute's stated purpose is to enhance railroad safety and reduce accidents. 49 U.S.C. § 20101. And allowing safety related suits under FELA will enhance, rather than impede, that purpose. FRSA regulations provide comprehensive minimum safety standards that apply to a broad range of situations. However, a railroad's conduct may comply

with those standards, yet still fall below the level of ordinary care expected of any reasonable person. And at least as to railroad employees, FELA suits serve to ferret out such situations that might otherwise evade the attention of regulators or that are less amenable to uniform, regulatory solutions. This enhances safety by providing additional incentives for railroads to conduct their operations safely.

*Madden*, 156 F.Supp.3d at 1020-21. Ultimately, this understanding aligns with the Eighth Circuit's concern in *Cowden*[ *v. BNSF Ry. Co.*, 690 F.3d 884 (8th Cir. 2012)]: the FRSA regulation[s] are intended to alleviate the "patchwork effect" of each state applying its own set of analogous safety regulation, and to that end, it is not apparent how allowing negligence claims by employees under FELA would threaten the purpose of the FRSA.

It is further worth noting the trend of cases ruling on the FRSA's preclusive effect over FELA since the *POM Wonderful* decision has been to find that FELA is not precluded. *See, e.g., Jones*, 306 F.Supp.3d at 1067-70 (FELA claim for failure to maintain track not precluded by FRSA regulation covering the same subject matter); *Bratton v. Kansas City Southern Ry. Co.*, 2015 WL 789127, at *1-2 (W.D. La. 2015) (negligent training/certification claim under FELA not precluded by FRSA); *Henderson v. Nat'l R.R. Passenger Corp.*, 87 F.Supp.3d 610, 611-12, 615-22 (S.D.N.Y. 2015) (FELA claim regarding defendant's failure to protect plaintiff from approaching train was not precluded by FRSA); *Madden*, 156 F.Supp.3d at 1018-19, 22 (plaintiff's FELA claim for failure to provide additional warning devices at railroad crossing was not precluded by FRSA); *Meachen v. Iowa Pacific Holdings*, 2016 WL 7826660, at *4 (D. Mass. 2016) (denying defendant's motion for summary judgment, holding that the FRSA does not preclude FELA claims); *Hanaburgh v. Metro-North Commuter R.R.*, 2015 WL 1267145, at *4-5 (S.D.N.Y. 2015).

***

To summarize, this Court finds that Webb's FELA claim is not precluded by the FRSA as a matter of law. While there are varied rulings on the issue, this Court finds that the FRSA and FELA act as complementary laws, and that allowing FELA claims does not threaten the uniformity of FRSA regulations or hinder the overall objectives of the FRSA.

-13-

*Webb v. Union Pac. R. Co.*, No. 2:19-cv-04075-MDH, 2020 WL 4589713, at *4-6 (W.D. Mo. Aug. 10, 2020).

In one scholarly piece by Dominic G. Biffignani in the Missouri Law Review, *Pomegranates and Railroads: Why POM Wonderful Suggests that the Federal Railroad Safety Act Should Never Preclude Federal Employers Liability Act Claims*, 86 MO. L. REV. 903 (2021), the author discussed the national trends of the FELA/FRSA preclusion issue, noting that "the majority of jurisdictions agree that FELA claims should never be precluded by FRSA, even where the regulations 'cover' the subject matter of the FELA claim," *Id*. at 926 (footnote omitted), while acknowledging that "FRSA's preclusive effect on FELA claims is still a contested legal issue in need of a uniform solution." *Id*. at 927. Thus, there is a split of authority, and we have found no post-*POM Wonderful*, controlling Tennessee authority on FELA/FRSA preclusion.

Defendant argues that FRA's regulations are a product of its expertise, and it is beyond a local jury's ambit to tinker with those regulations. Defendant offers as an example a claim brought by a rail worker based on a train's alleged excessive speed. Defendant states that, to a layman, reducing speed might seem like the inherent safer choice. In fact, Defendant asserts, unduly slowing down and speeding up may increase other risks like derailment. In essence, Defendant contends that preclusion protects the uniformity of well-considered regulations grounded in FRA's expertise against a patchwork of local standards.

We find Defendant's arguments unpersuasive. FRA's issuance of regulations is in no sense dependent upon local juries. For some time post *Pom Wonderful*, a growing number of jurisdictions have declined to find preclusion, yet there is no suggestion that FRSA's regulatory scheme has collapsed because of this trend. Neither are FRA's regulations the be-all, end-all of a railroad company's duty. The regulations constitute a floor, not a ceiling. As Plaintiff puts it in his brief, "[a]ssuming CSX complied with the minimum FRA standards does not relieve CSX of its duty to provide Rouzer with his federal right to a reasonably safe place to work." We agree. The relevant standard is that of a railroad company's duty to provide a safe workplace. Juries across the country are routinely instructed in duty and then tasked with finding whether that duty was breached. It may well be that a railroad company's conduct has, notwithstanding its adherence to minimal FRA regulations, fallen short of its duty of care to an employee under FELA.

Defendant's concern that declining to find that FRSA precludes FELA risks destroying FRSA's national rail regulatory scheme is hypothetical at best. By contrast, the consequences of preclusion to FELA are concrete and palpable. The instant case is an illustration—preclusion means, in effect, that Plaintiff cannot seek redress under FELA for

his on-the-job injury.[2]  Thus, declining to find preclusion allows FELA to continue operating toward the redressive ends for which it was passed by Congress.  On the other hand, finding that FRSA precludes FELA wholly undermines FELA, at least with respect to rail employees like Plaintiff.  Both FELA and FRSA ultimately are concerned with rail safety.  In the case of FRSA, the adoption of regulations establishes a basic level of safety to minimize the occurrence of accidents in the first place.  Meanwhile, FELA provides a means for railroad workers to seek redress when they are injured on the job.  Neither statute suffers from the operation of the other.

While both FELA and the later-passed FRSA are concerned with rail safety, FELA does not have to "make way" for FRSA.  The statutes are complementary, not at odds.  As the United States Supreme Court stated, "[w]hen two statutes complement each other, it would show disregard for the congressional design to hold that Congress nonetheless intended one federal statute to preclude the operation of the other."  *POM Wonderful*, 573 U.S. at 115.  It is true that the statutes at issue in *POM Wonderful* are different from those at issue in the current matter.  Even still, we find the analysis from the nation's highest court controlling.  *POM Wonderful* did not say "when the two statutes involved in this case" but instead used the inclusive language of "when two statutes . . . ."  Since FELA and FRSA complement one another, and nothing in the statutory text or in history demands preclusion, we decline to show disregard for the congressional design by inferring preclusion nonetheless.  In the past, Tennessee has been guided by *Nickels*, which stood for preclusion.  However, *Nickels* predates *POM Wonderful*.  As noted by the Trial Court, "Defendant does rely on the 6th Circuit for support which refutes the analysis established in *POM Wonderful*."  The problem with this is that lower courts have neither the ability nor the right to "refute" the analysis of the Supreme Court.  The language of *POM Wonderful* is clear and we are required to apply it.  In view of the United States Supreme Court's clarifying opinion in *POM Wonderful*, we hold that Plaintiff's FELA claim is not precluded by FRSA.  We, therefore, reverse the Trial Court's grant of summary judgment to Defendant, and remand for proceedings consistent with this Opinion.

We next address whether the Trial Court erred in dismissing Plaintiff's claim rooted in Worsham's alleged negligence.  The Trial Court ruled that "[t]he preclusion argument is dispositive of the entire case."  As we reverse the Trial Court on the preclusion issue and that was its sole rationale, we reverse the Trial Court's judgment regarding Plaintiff's claim rooted in Worsham's alleged negligence as well.

Lastly, Defendant asserts that if we reverse the Trial Court, Defendant's previously raised arguments for summary judgment in addition to preclusion should be considered by

---

[2] We take no position on the merits of Plaintiff's claim.

the Trial Court.  Defendant is correct, and it may pursue these additional arguments for summary judgment on remand.

## **Conclusion**

The judgment of the Trial Court is reversed, and this cause is remanded to the Trial Court for collection of the costs below and further proceedings consistent with this Opinion.  The costs on appeal are assessed against the Appellee, CSX Transportation, Inc.


_____
D. MICHAEL SWINEY, CHIEF JUDGE